# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Department of       :
Education,                       :
              Petitioner       :
                            :
                            :
      v.                :    No. 1617 C.D. 2014
                            :
Ryan Bagwell,                    :
             Respondent       :


Pennsylvania State University,   :
             Petitioner       :
                            :
      v.                :    No. 1729 C.D. 2014
                            :
Ryan Bagwell,                    :    Argued: December 7, 2015
             Respondent       :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE MARY HANNAH LEAVITT, Judge[1]
              HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**          **FILED: January 29, 2016**


       In these consolidated appeals, the Pennsylvania Department of Education (Department) and the Pennsylvania State University (PSU) petition for review of the Office of Open Records' (OOR) final determination that directed disclosure of records to Ryan Bagwell (Requester) under the Right-to-Know Law (RTKL).[2] Requester sought communications between former Secretary of Education Ronald Tomalis (Former Secretary) and PSU Board members and administrators

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

implicating the Gerald Sandusky investigation. The Department did not fulfill the request; instead, it demanded prepayment before reviewing the records. Before OOR, the Department claimed the attorney-client and work-product privileges and certain exceptions in Section 708(b) of the RTKL, 65 P.S. §67.708(b), protected the records. OOR directed disclosure because the Department did not establish any exemption. OOR also ruled the Department did not comply with Section 902(b) of the RTKL, 65 P.S. §67.902(b), because it did not demand fees in its initial response.

These appeals present a matter of first impression regarding the timeframe within which an agency may demand prepayment under Section 1307(h) of the RTKL, 65 P.S. §67.1307(h). The Department and PSU contend OOR erred in ordering disclosure when the Department did not process the request. They argue OOR also erred in not bifurcating the appeals process to address the prepayment issue first. Alternatively, they assert the Department proved the exempt status of the records. We are also asked to determine whether PSU has standing to protect the records under the attorney-client and work-product privileges as the privilege holder. Upon review, we affirm in part, and vacate and remand in part.

## I. Background

Requester submitted a request to the Department seeking:

1. all letters, e-mails, memorandums and reports that were sent in July 2012, August 2012 or between October 1, 2011 and March 31, 2012 … between [Former Secretary] and [29 individuals who were PSU administrators or Board members].

2

> 2. all letters, e-mails, memorandums, and reports that were sent in July 2012, August 2012 or between November 1, 2011 and March 31, 2012, pertain to [PSU], and were sent between [Former Secretary] and [former Governor Tom Corbett and five members of the former Governor's executive staff and cabinet].

Reproduced Record (R.R.) at 6a-7a.

The Department sent a response within five business days. It invoked a 30-day extension pursuant to Section 902(a) of the RTKL, 65 P.S. §67.902(a) (Extension Notice). An extension was necessary based on "[t]he extent or nature of the request" and to conduct a "legal review" regarding access. R.R. at 10a. The Extension Notice stated a date certain for a response in accordance with Section 902(b) of the RTKL; it did not contain an estimate of fees.

On the last day of the extension period, the Department advised Requester it "located approximately 644 pages of records that are responsive to your request. This is not a final response. We reserve the right, in our final response, to assert any exceptions to access to the records under the RTKL[.]" R.R. at 13a (emphasis added). Notably, the Department demanded prepayment of $338.88 ($320 for duplication plus $16.88 for postage) in order to "process" the request. Id. (Prepayment Demand). The Department explained the 644 pages corresponded to "the number of potentially responsive records," as it did not perform a legal review to assess exemptions. Id.

Relevant here, the Prepayment Demand stated Requester must pay the estimate "before [the Department] will provide access to the records since the estimate exceeds $100" pursuant to 65 P.S. §67.1307(h) (relating to prepayment).

3

Id. Unless Requester made the required prepayment, the Department advised its "obligations under the RTKL are ended with regard to this request … [as] [a]ll applicable fees must be paid in order to receive access to the records requested." Id. Once Requester paid the fee, the Department would assert any "available exceptions under the RTKL" at that time. Id.

Requester appealed to OOR, asserting his request was deemed denied because an agency may not issue interim responses and reserve denial grounds. As to the prepayment request, Requester argued an agency must include an estimate of fees in its initial five-day response under Section 902 of the RTKL if it elects to invoke an extension. Contending the Department's response was not "final," Requester asked OOR to order disclosure of the 644 potentially responsive records. R.R. at 4a.

OOR invited both parties to supplement the record and directed the Department to notify any interested third parties of their opportunity to participate in the appeal pursuant to Section 1101(c) of the RTKL, 65 P.S. §67.1101(c). PSU requested to participate in the appeal, and OOR granted PSU's request.

Both parties and PSU, as a direct interest participant, supplemented the record. In its submission, the Department requested OOR to bifurcate the appeal to first address the prepayment issue.

Additionally, the Department argued certain responsive records were exempt from disclosure under the attorney-client and work-product privileges, as

4

well as the predecisional deliberative exception and the noncriminal investigative exception. The Department submitted an affidavit of the Former Secretary (Tomalis Affidavit). In its position statement, PSU explained the Department did not identify the responsive records. As a result, PSU was unable to review the records and assess applicable exemptions. Based on the subject matter, PSU asserted the records would include communications between counsel and PSU Board members implicating the attorney-client and work-product privileges. R.R. at 49a. Both the Department and PSU asked OOR to bifurcate the appeals process to address prepayment prior to accepting evidence regarding the substantive exemptions.

Ultimately, OOR issued its final determination granting access to the records, with redactions, Bagwell v. Department of Educ., OOR Dkt. No. AP 2014-0935 (filed August 13, 2014) (Final Determination). Interpreting the RTKL, OOR found that the Department waived its ability to seek prepayment under Section 1307(h) of the RTKL because it did not include its fee estimate within the five-day notice. R.R. at 68a. OOR explained "the RTKL does not create or mention any extension mechanism or 'interim response' process outside of the thirty day time period, without written authorization from the requester." R.R. at 68a-69a. As a result, OOR deemed the Prepayment Demand the "response"[3] because it was issued after invoking a 30-day extension. Id.

---

[3] "Response" is defined as: "Access to a record or an agency's written notice to a requester granting, denying or partially granting and partially denying access to a record." Section 102 of the RTKL, 65 P.S. §67.102.

5

As to the merits, OOR determined the Department did not establish any exemption protected information other than telephone numbers and email addresses, and home addresses of minors. Specifically, OOR found the Tomalis Affidavit insufficient because it merely parroted the elements of the privileges, and it contained only conclusory statements without factual support that the records constituted deliberations or investigations. Accordingly, OOR ordered the Department to disclose the records with minimal redaction.[4]

The Department filed a petition for review of the Final Determination to this Court, which was docketed at No. 1617 C.D. 2014. PSU filed a notice of intervention in this appeal, which Requester challenges in his brief. PSU then appealed the Final Determination in a separately docketed proceeding No. 1729 C.D. 2014, which Requester asks this Court to quash for lack of standing. This Court then consolidated the petitions for review. OOR filed an *amicus curiae* brief. After hearing argument by all parties and OOR, we address these appeals in our appellate capacity.

## II. Discussion

The RTKL is remedial in nature and "is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions

---

[4] After OOR issued its final determination, PSU sought reconsideration. It asserted lack of an opportunity to establish exemptions. In conjunction with its reconsideration petition, PSU submitted an affidavit pertaining to four emails it speculated were within the potentially responsive records. However, it explained the affidavit was incomplete because the Department did not identify or furnish any responsive records to PSU for a legal assessment. OOR did not reconsider its determination, claiming the petition for reconsideration was denied by operation of law when the Department appealed.

of public officials, and make public officials accountable for their actions." Pa. State Police v. McGill, 83 A.3d 476, 479 (Pa. Cmwlth. 2014). Consistent with the RTKL's goal of promoting government transparency and its remedial nature, the exceptions to disclosure of public records must be narrowly construed. Id.

These appeals present several issues for this Court's review,[5] involving procedural questions, statutory construction, and disclosure disputes. First, we address Requester's challenge to this Court's jurisdiction over PSU's direct appeal, and whether this Court should quash PSU's intervention notice. Second, we consider whether the RTKL requires an agency invoking an extension to demand prepayment within five days where fees are expected to exceed $100. Third, we address whether OOR erred in directing disclosure of responsive records when the Department did not review the records before seeking prepayment, and when the Department submitted the Tomalis Affidavit as evidence to establish privileges and RTKL exceptions. Fourth, we consider whether OOR erred by not bifurcating the appeal to first decide the propriety of the Prepayment Demand. Finally, we assess whether attorney fees are warranted.

## A. PSU's Standing and Party Status

Initially, we address Requester's contention that this Court lacks jurisdiction over PSU's appeal and that it should quash PSU's intervention notice. In this case, PSU appealed OOR's Final Determination, docketed at 1729 C.D.

_____

[5] In a RTKL appeal involving a Commonwealth agency, this Court has the discretion to rely upon the record created below or to create its own. Dep't of Labor & Indus. v. Heltzel, 90 A.3d 823 (Pa. Cmwlth. 2014) (en banc); see also Bowling v. Office of Open Records, 990 A.2d 813 (Pa. Cmwlth. 2010) (en banc), aff'd, 75 A.3d 453 (Pa. 2013).

2014, and filed a notice to intervene in the Department's appeal of the same determination, docketed at 1617 C.D. 2014.

PSU's direct interest participation under Section 1101(c) of the RTKL does not confer party status under the RTKL. Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc., 13 A.3d 1025 (Pa. Cmwlth. 2011). As neither the requester nor the agency before OOR, PSU has no right to appeal under the RTKL. See Sections 1301(a) and 1302(a) of the RTKL, 65 P.S. §§67.1301(a), 67.1302(a) (stating "a requester or the agency may file a petition for review"). However, PSU asserts a due process right to appeal founded in the Pennsylvania Constitution as implemented by the Judicial Code.

We consider whether PSU has a due process right to directly appeal, and a separate right to participate in these proceedings.

**1. Right to Appeal**

This Court recently addressed a motion to quash a direct interest participant's petition for review in West Chester University v. Schackner (Bravo) 124 A.3d 382 (Pa. Cmwlth. 2015). There, a third-party contractor petitioned for review from OOR's determination requiring disclosure of a marketing contract. The contractor alleged the contract contained confidential proprietary information and trade secrets exempt under Section 708(b)(11) of the RTKL, 65 P.S. §67.708(b)(11). We considered the legislative intent to protect trade secrets under the RTKL and the Uniform Trade Secrets Act (Act), 12 Pa. C.S. §§5301-5308. In our analysis, we noted the Act instructs courts to preserve secrecy of trade secrets

by any reasonable means, including "granting protective orders in connection with discovery proceedings, holding *in camera* hearings, sealing the records of the action." Bravo (quoting 12 Pa. C.S. §5306). After recognizing proprietary records and trade secrets implicate a property interest, we held the contractor had a due process right, outside the RTKL, to preserve its interest in protected information. Thus, the contractor had standing predicated on its due process right to protect its property interest.

Here, the interest PSU seeks to protect is the attorney-client and work-product privileges as the privilege holder. Similar to trade secrets, our courts recognize the sanctity of preserving the privileges asserted here. Gillard v. AIG Ins. Co., 15 A.3d 44 (Pa. 2011); McGowan v. Dep't of Envtl. Prot., 103 A.3d 374 (Pa. Cmwlth. 2014); Dages v. Carbon Cnty., 44 A.3d 89 (Pa. Cmwlth. 2012).

As to the importance of protecting these privileges in the RTKL context, our Supreme Court explained:

> The RTKL … specifically exempts privileged documents from disclosure by defining public records subject to disclosure as '[a] record, including a financial record, of a Commonwealth or local agency that … is not protected by a privilege.' 65 P.S. §67.102; see also [Section 305(a) of the RTKL,] 65 P.S. §67.305(a) ('A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if . . . the record is protected by a privilege.'). … While an agency 'may exercise its discretion to make any otherwise exempt record accessible,' it does not have such discretion if the record is privileged. [Section 506(c)(2) of the RTKL,] 65 P.S. §67.506(c)(2).

9

Levy v. Senate of Pa. (Levy II), 65 A.3d 361, 368 (Pa. 2013) (emphasis added). Our courts also attempt to preserve attorney privileged material through various methods, including *in camera* review and privilege logs. Id.; Dep't of Educ. v. Bagwell, 114 A.3d 1113 (Pa. Cmwlth. 2015) (Bagwell (2015)).

We are persuaded by federal jurisprudence approving standing to challenge disclosure of privileged records. Generally, standing inures to the person or entity holding the privilege to preserve it. In re Grand Jury, 705 F.3d 133 (3d Cir. 2012) (holding interest in non-disclosure of work product and attorney-client privileged material conferred standing on corporation to object to their disclosure).

Further, akin to the apparent intent to protect trade secret status, there is a clear legislative and judicial intent to protect attorney-client material. See 42 Pa. C.S. §5904 (codifying attorney-client privilege); Pa. R.C.P. No. 4003.3 (protecting work product from discovery). "The General Assembly specifically chose to protect this type of information in [Section 102] of the RTKL. [Therefore], granting access to the requested record would eviscerate the protection that was expressly provided by the General Assembly." Dep't of Corr. v. Maulsby, 121 A.3d 585, 593 (Pa. Cmwlth. 2015).

Mindful that attorney-client and work-product privileges enjoy statutory protection and that privileged records are not public records to which the public has a statutory right of access, the privilege holder has an interest in their protection. Not permitting the privilege holder to defend against disclosure "violates the statutory scheme of the RTKL." Pa. State Educ. Ass'n v. Dep't of

10

Cmty. & Econ. Dev. (PSEA), 110 A.3d 1076, 1086 (Pa. Cmwlth. 2015) (en banc). Accordingly, we hold attorney privileges constitute a sufficient interest to allow a privilege holder standing to appeal an order directing disclosure of allegedly privileged material.

In addition, Article V, Section 9 of the Pennsylvania Constitution guarantees the right to an "appeal ... from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law." PA. CONST. art. V, §9. This constitutional right is "implemented by Section 5105(a) of the Judicial Code, 42 Pa. C.S. §5105(a).[6]" Com. v. Englert, 457 A.2d 121, 126 (Pa. Super. 1983). Although the provision applies only to agency actions that are adjudications or "decisions that are …judicial in nature[,]" this Court explicitly declared: "[S]ection 5105(a)(2) of the Judicial Code … grants the right to appeal agency determinations that are not considered adjudications pursuant to

---

[6] Section 5105(a)(2) of the Judicial Code provides:

> There is a right of appeal under this subsection from the final order (including an order defined as a final order by general rule) of every:
>
> ****
>
> (2) Government unit which is an administrative agency within the meaning of section 9 of Article V of the Constitution of Pennsylvania to the court having jurisdiction of such appeals. An order is appealable under this paragraph notwithstanding the fact that it is not appealable under Chapter 7 of Title 2 (relating to judicial review).

42 Pa. C.S. §5105(a)(2).

11

the Administrative Agency Law[.][7]" Wheeler v. Pa. Bd. of Prob. & Parole, 862 A.2d 127, 129 (Pa. Cmwlth. 2004) (emphasis added).

OOR's determination is "judicial in nature" because OOR is "a quasi-judicial tribunal[.]'" Office of Open Records v. Center Twp., 95 A.3d 354, 363 (Pa. Cmwlth. 2014) (en banc). Our Supreme Court recently recognized,

> OOR, with its Executive Director at the helm, is a unique administrative agency tasked with applying the standards established in the RTKL and making decisions about whether government agencies and officials … have acted timely, carried their burden of establishing why a record is not subject to public access, as well as myriad other issues.

Arneson v. Wolf __ A.3d __, __ (Pa., No. 51 MAP 2015, filed October 27, 2015) (emphasis added).

Further, addressing the right to an appeal, our Court recently emphasized "[t]his constitutional proviso" offers a means of seeking judicial review of quasi-judicial action, recognizing "the fact that both property rights and personal rights can be seriously affected by [administrative agency] decisions." Center Twp., 95 A.3d at 364 (quotation omitted); see also Bravo, 124 A.3d at 391 n.13. However, in order to rely on Section 5105 of the Judicial Code, a party "must show [it] meet[s] the traditional test for standing." Cent. Storage & Transfer Co. v. Pa. Pub. Util. Comm'n, 477 A.2d 568, 571 (Pa. Cmwlth. 1984).

---

[7] 2 Pa. C.S. §§501-508, 701-704.

12

The traditional test for standing requires a party seeking to challenge an agency action to show a "direct and substantial interest [and] a sufficiently close causal connection between the challenged action and the asserted injury" so the interest qualifies as immediate. DeFazio v. Civil Serv. Comm'n of Allegheny Cnty., 756 A.2d 1103, 1105 (Pa. 2000). Our Supreme Court defined these elements as follows:

> [A] substantial interest requires some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law. … Direct simply means that the person claiming to be aggrieved must show causation of the harm to his interest by [the government's actions]. The immediacy or remoteness of the injury is determined by the nature of the causal connection between the action complained of and the injury to the person challenging it.

Id. (quotation omitted).

As privilege holder, PSU is able to show a sufficient nexus to the disclosure dispute to afford it standing to challenge OOR's Final Determination. PSU is aggrieved by an order directing disclosure of records that implicate its attorney-client and work product privileges. Accordingly, we hold PSU may appeal from OOR's Final Determination. As such, this Court exercises jurisdiction over PSU's appeal, and we find no merit in Requester's request to quash it.[8]

---

[8] Because PSU has standing to appeal, we also determine PSU had a sufficient interest to intervene in this matter. However, PSU erred in filing a notice to intervene because it was not a party below. See Pa. R.A.P. 1531(a). Nevertheless, PSU may participate as a party aggrieved.

13

## 2. Right to Participate

Our courts recognize third parties who are the subjects of the record, or whose information is at risk, may participate in appeals of final determinations when they participated, or attempted to participate, below. See Bravo (explaining Section 1101(c) participation does not confer standing, but allows participation before the courts when either a requester or agency appeals under Chapter 13 of the RTKL); State Emps. Ret. Sys. v. Fultz, 107 A.3d 860 (Pa. Cmwlth. 2015).

This Court recognizes a due process right to be heard extended to third parties in two distinct scenarios: (1) individuals' home addresses under the personal security exception, Section 708(b)(1)(ii); and, (2) proprietary or trade secret information under the trade secrets exception, Section 708(b)(11). See, e.g., State Emps.' Ret. Sys. v. Pennsylvanians for Union Reform (SERS v. PFUR), 113 A.3d 9 (Pa. Cmwlth. 2015) (remanding for OOR to address individuals' objections to home address disclosure); Maulsby (recognizing third party's due process right to assert exemption as to health care service contract implicating release of proprietary information). In both situations, we considered the legislature's recognition of the importance of the exemption, and the importance of protecting the information at issue when the RTKL did not provide for the impact of disclosure on third parties who have a legitimate interest in protecting the information at issue.

Our recent jurisprudence recognizes a third party may be entitled to due process during the appeals process through notice and an opportunity to meaningfully defend against disclosure. PSEA; SERS v. PFUR; Fultz; Maulsby;

14

Dep't of Conservation & Natural Res. v. Vitali (Pa. Cmwlth., No. 1013 C.D. 2014, filed July 7, 2015) (unreported) (relating to third-party contractor's confidential proprietary information). It is now well-established that agencies are not permitted to waive a third party's interest in protecting the records. Maulsby; Vitali. At a minimum, third parties may submit evidence before the initial fact-finder to show an interest in shielding certain information from disclosure. See, e.g., PSEA (relating to protection of home addresses under the personal security exception, Section 708(b)(1)(ii)); Maulsby (relating to protecting confidential proprietary information under the trade secrets exception, Section 708(b)(11)).

Under these circumstances, when PSU had no opportunity to review records in the Department's possession to which OOR's disclosure order applied, PSU established a deprivation of due process that merits a remand. In its direct interest statement, PSU explained its inability to submit evidence as to the 644 records potentially at issue. Thus, PSU did not have a meaningful opportunity to be heard before the initial fact-finder, OOR. Accordingly, we remand this matter to OOR to allow PSU a meaningful opportunity to preserve its privilege. See Fultz (remanding for OOR to consider employees' direct interest submissions).

**B. Prepayment Demand**

The Department contends it was not required to seek prepayment in its Extension Notice, and there is nothing in the RTKL requiring a prepayment notification to be made within five days. Requester counters that Section 902(b) requires an extension notice to include an estimate of fees, and by expansion, a request for prepayment when the fee estimate exceeds $100.

We begin by reviewing the relevant statutory framework. Section 901 of the RTKL, which sets forth the general rule for an agency response, states:

> Upon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record, legislative record or financial record and whether the agency has possession, custody or control of the identified record, and <u>to respond as promptly as possible under the circumstances existing at the time of the request</u>. All applicable fees shall be paid in order to receive access to the record requested. <u>The time for response shall not exceed five business days from the date the written request is received by the open-records officer for an agency.</u> If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied.

65 P.S. §67.901 (emphasis added). However, when an agency needs additional time to fulfill a request, Section 902 of the RTKL allows an agency to invoke a 30-day extension in certain circumstances.[9]

---

[9] An agency may invoke an extension for the following reasons:

(1) the request for access requires redaction of a record …;
(2) the request for access requires the retrieval of a record stored in a remote location;
(3) a timely response to the request for access cannot be accomplished due to bona fide and specified staffing reasons;
(4) a legal review is necessary to determine whether the record is a record subject to access under [the RTKL];
(5) the requester has not complied with the agency's policies regarding access to records;
(6) the requester refuses to pay applicable fees authorized by this act; or
(7) the extent or nature of the request precludes a response within the required time period.

65 P.S. §67.902(a).

Regardless of whether an agency proceeds under Section 901 or Section 902, an agency must respond within five business days either: (1) by granting or denying access to requested records; or, (2) by invoking an extension notifying a requester when to expect a substantive response. As to the content of this notice, Section 902(b) provides: "[t]he notice <u>shall include</u> a statement notifying the requester that the request for access is being reviewed, the reason for the review, a reasonable date that a response is expected to be provided and <u>an estimate of applicable fees owed</u> when the record becomes available." 65 P.S. §67.902(b)(2) (emphasis added).

Additionally, when a fee estimate is expected to exceed $100, an agency is entitled to demand prepayment "[p]rior to granting a request for access." 65 P.S. §67.1307(h). Section 1307(h) does not contain a specific timeframe for demanding prepayment. As both provisions relate to fee estimates, it is reasonable to construe Sections 1307(h) and 902(b)(2) together. 1 Pa. C.S. §1932.

### 1. Fee Estimate

Requester argues OOR did not err in construing Section 902(b) as requiring a prepayment demand for estimated fees to be included in the Extension Notice. In light of the surrounding provisions and the practical effect, we disagree.

Although the plain language of Section 902(b)(2) suggests the five-day notice "shall include" an estimate of fees, such an interpretation disregards an agency's reason for invoking the extension. An agency invokes a 30-day extension because it needs the additional time, (beyond five business days), to locate, review,

17

analyze or redact records. Stated differently, as interpreted by Requester, Section 902(b)(2) of the RTKL negates the additional time for review allotted by Section 902(a).

Further, we must consider what preparation of the fee estimate entails. The only permissible fees under the RTKL are for duplication, postage, and certification. Section 1307(a), (b), (c) of the RTKL. Fees for staff time reviewing or redacting records are not permissible. See Section 1307(g) of the RTKL, 65 P.S. §67.1307(g) ("no fee may be imposed for an agency's review of a record to determine whether the record is a public record … subject to access in accordance with [the RTKL]"); State Emps. Ret. Sys. v. Office of Open Records (SERS v. OOR), 10 A.3d 358 (Pa. Cmwlth. 2010). Therefore, any fee estimate of charges that may be passed on to the requester must correspond to the number of pages of records that will be sent to the requester and the cost of sending them. Prison Legal News v. Office of Open Records, 992 A.2d 942, 948 (Pa. Cmwlth. 2010) (estimate must include "the methodology used in arriving at the prepayment amount.").

In this case, the construction of Section 902(b)(2) proffered by Requester and OOR is in accordance with its plain language such that any fee estimate "shall" be sent within five business days. By contrast, the Department characterizes that construction as unreasonable because determining a fee estimate within five business days is not feasible when requests are voluminous, or require legal review or redaction. Both sides present reasonable arguments.

That Section 902(b) contains the word "shall" does not preclude our construction reconciling the internal conflict within this provision. Levy II; see

18

also Dep't of Transp. v. Office of Open Records (Aris), 7 A.3d 329 (Pa. Cmwlth. 2010) (construing phrase "shall consist of" in Section 1303(b), record on appeal, as permitting additional evidence reviewed by OOR). Taking a cue from our Supreme Court, we recognize that "shall" when used in the RTKL may be subject to equally reasonable interpretations. Levy II.

Relevant here, in Levy II, our Supreme Court construed the "shall" language within Section 903 ("shall include the specific reasons for the denial") as ambiguous in light of the surrounding provisions. Id. at 380 (recognizing "both sides present[ed] meritorious positions [construing the RTKL]" based on the "plain language" of different RTKL provisions). Thus, like our Supreme Court in Levy II, "we must consider other indicators of legislative intent including '[t]he occasion and necessity for the statute,' '[t]he mischief to be remedied,' '[t]he object to be attained,' and '[t]he consequences of a particular interpretation.' 1 Pa. C.S. §1921(c)." Id. at 381.

In light of the ambiguity of the term "shall" as used here, we apply statutory construction principles to discern the meaning of the provision in context. As our Supreme Court analyzed in Levy II:

> In interpreting a statute, we presume that the General Assembly does not intend an absurd result, to violate the Constitution, nor to favor a private interest over the public interest. 1 Pa. C.S. §1922. Additionally, we interpret remedial legislation liberally to effect its object and promote justice. See, e.g., 1 Pa. C.S. §1928(c). Statutes and parts of statutes that relate to the same persons or things must be read in *pari materia*. 1 Pa. C.S. §1932.

19

Id. at 380. Accordingly, we construe the RTKL to favor the public interest in efficient disclosure of public records.

To that end, we hold a fee estimate does not need to be included in the first response, sent within five business days, to a requester.[10] Just as the "shall" in Section 903 did not entail waiver of any non-asserted denial grounds, the "shall" in Section 902(b) does not entail waiver of an agency's right to demand prepayment when fees owed are expected to exceed $100. See Levy II.

Moreover, an agency's fee estimate must be reasonable. Prison Legal News. For such an estimate to comprise more than a guess, and closely correspond to the fees a requester will owe when an agency undertakes the final step of duplication and physical redaction, an agency must review the records at issue. Id. At a minimum, a fee estimate should represent the cost of duplicating and sending *public* records, not potentially responsive records, to a requester. Indeed, the alternative would be an agency agreeing to duplicate and send records to which a valid exemption may apply. Such an interpretation would yield an absurd result.

Our holding here is not inconsistent with our decision in Prison Legal News. There, the timing of the prepayment demand was not at issue. We held a requester may challenge the reasonableness of a fee estimate regardless of a grant

---

[10] Although we hold the word "shall" is not mandatory as to including an estimate of fees in the initial response, the provision may be read as mandating the notice to include three elements: (1) notice of the review; (2) the reason for the review; and, (3) a reasonable future date that a response *and* an estimate of fees is expected to be provided. In other words, the notice would contain the future response date, at which time *both* the substantive response and the estimate of fees would be provided.

20

of access.  Importantly, we addressed as a matter of first impression the sufficiency of a fee estimate.  As a result, we remanded to OOR to remand to the agency to explain how it derived its fee estimate.

Given the different issue in the current dispute, Prison Legal News offers limited utility.  Also, we recognize Prison Legal News was one of the first cases construing the RTKL.  In the more than five years since that decision, this Court gained considerable familiarity regarding the RTKL and its quirks, and its occasional incompatibility with practical application.

Those years underscore the necessity for ensuring an agency performs certain steps in processing a request prior to demanding prepayment.  We thus clarify the timeline for processing and making demands for prepayment.  An agency is not permitted to seek prepayment until it has reviewed the request, reviewed responsive records, and decided it is granting access to certain records reviewed.  Accordingly, an agency must assess public status before it has the right to demand prepayment under Section 1307(h) of the RTKL.

Although we uphold the Department's construction of Sections 902 and 1307 to allow a prepayment demand to be issued on the last day of the extension period, the Department did not properly implement the fee estimate provisions here.  As explained above, an agency needs to assess which records are being produced in order to formulate a reasonable fee estimate.  Here, the Department claims it did not assess public status before sending the Prepayment Demand.  In so doing, the Department erred.

21

Contrary to the Department's implementation of Section 1307(h), an agency may not use a prepayment demand as an excuse to delay processing a request. It is unclear what steps in "processing" the Department undertook prior to demanding prepayment here. At a minimum, it is clear the Department did not assess public status. Careful review of the Department's submissions suggests the Prepayment Demand is a means of charging for its preparation of records for review, not for duplication for the Requester.

In its position statement, the Department explained the fee estimate corresponded to 644 pages as follows:

> In order to properly review the records and identify any exceptions to access and complete necessary redactions, if any, [the Department] will need to print each e-mail, including any attachments, and photocopy any records already maintained in hard-copy to maintain the originals in their current location and in their unredacted form. This initial step would require [the Department] to incur the costs to convert to hardcopy or photocopy the approximately 644 pages of records. Only then could [the Department] proceed to review the records for applicability of exemptions and redaction as appropriate.

R.R. at 28a (emphasis added).

An agency may only pass on the cost of duplication that corresponds to those pages to which an agency is granting access. See generally Section 1307. In other words, that the Department is copying or printing 644 pages in order to review the records to then assess their public status is not a fee that may be passed on to the requester unless the Department intends to send the requester copies of all

22

644 pages. Because the Department sought to assert a number of exemptions to disclosure, and thus reduce the number of records ultimately disclosed, it is apparent the fee estimate did not correspond to the fees that may be passed on to a requester.

From our review of the Department's Prepayment Request, it did not determine whether all 644 pages would be disclosed to Requester. The Department did not analyze the content of the 644 pages as to public status at all. It reserved that aspect of "processing" the Request until after it received payment of more than $300.

## 2. Interim Response

While OOR erred in construing Section 902(b) to require an estimate of fees within five days, OOR did not err in requiring an agency to issue a final response within the 30-day extension. The Department was not permitted to reserve its reasons for withholding or redacting records to a future response outside the 30-day extension period.

The RTKL does not contemplate a series of interim responses. Dep't of Transp. v. Drack, 42 A.3d 355 (Pa. Cmwlth. 2012). Rather, "once an agency exercises its right under Section 902 of the RTKL, it must provide a *final* response within the thirty-day period." Id. at 362 (emphasis in original).

Our opinion in Drack provides guidance on this issue. There, the requester submitted a request to the Department of Transportation (DOT) seeking records relating to a speed control device. DOT invoked a 30-day extension to make a legal determination as to whether the documents were subject to access

23

under the RTKL. On the last day of the extension period, DOT notified the requester it was providing an "interim response," reserving the right to assert any exemptions to disclosure at an unspecified later date. In this "interim response," DOT advised the requester he owed $16.38 in fees from prior requests, and agency policy required payment of the balance before DOT would process the RTKL request. Upon receipt of the requester's payment, DOT would process the request, determine public status under the RTKL, search and retrieve the records, redact the records if necessary, and notify the requester of the date on which the records would be available.

The requester appealed to OOR. During the pendency of that appeal, the requester paid the outstanding balance, and DOT provided records from which it redacted information protected by the attorney-client privilege. Ultimately, OOR ordered DOT to provide the requester with unredacted records. DOT then appealed to this Court.

Upon review, we agreed with OOR that DOT had an obligation to raise its denial grounds in the response issued at the end of the extension period. We reasoned:

> [O]nce an agency exercises its [extension] right under Section 902 of the RTKL, it must provide a final response within the thirty-day period, and that final response, under Section 903 of the RTKL, must identify all reasons why an agency is denying access to all or part of the requested records.

Drack, 42 A.3d at 362. Consequently, we held an agency was required to identify all reasons for denying a request within the 30-day extension period.

24

Drack thus favors an interpretation that an agency should provide a fee estimate by the last day of the extension period. Because it issued the Prepayment Demand on the last day of the extension period, the Department should have asserted any exemptions within that response. Drack.

This Court's more recent decision in Borough of West Easton v. Mezzacappa (Pa. Cmwlth., No. 1278 C.D. 2014, filed June 8, 2015) (unreported) also favors inclusion of a fee estimate in the final response. There, this Court adopted the trial court's reasoning in West Easton v. Mezzacappa (C.P. Northampton, No. C–48–CV–2013–12530, filed October 1, 2014) regarding interpretation of Section 902 and fee demands.

In Mezzacappa, the borough raised a concern that OOR was "setting new precedent by requiring that the amount of copying fees be itemized within five (5) business days," claiming OOR's construction was infeasible. Id., slip op. at 39. The trial court found the concern unwarranted, reasoning OOR mistakenly referred to a requirement to include a fee estimate within the five-day notice. The trial court stated "it was apparent that … OOR intended to refer not to the five-day response period but to the full response period as enlarged by thirty days at the option of the [b]orough." Id., slip op. at 40. As OOR explained in its *amicus* brief that it consistently construes Section 902(b) to require a fee estimate within the five-day response period, it appears OOR attempted to set such precedent.

25

This Court consistently requires agencies to raise and defend all applicable exemptions before the initial fact-finder. Levy III; see, e.g., Dep't of Envtl. Prot. v. Legere, 50 A.3d 260, 267 (Pa. Cmwlth. 2012) ("It should be noted that had [the agency] undertaken the search that it was required to perform to meet its obligations under the RTKL, it would have located the required records and would have been able to discern any applicable exemptions related to the specific records located at that time."). Therefore, the Department had an obligation to raise and defend its exemptions before OOR, or lose that opportunity.

Indeed, the Department had a "full and fair opportunity" to review the records from May 7, 2014 (the date the request was made) until June 25, 2014 when it was required to submit argument and evidence to OOR.[11] Id. The lack of review falls squarely on the Department. We thus conclude OOR did not err when it denied the *Department* further opportunity to review responsive records in order to determine whether the requested records are exempt.

PSU also contends that it lacked a meaningful opportunity to demonstrate the non-public nature of potentially responsive records.[12] Although

---

[11] We note the Department did not object to OOR's deadline as an abuse of discretion.

[12] PSU also contends OOR erred in not considering the evidence it submitted with its reconsideration petition. Such evidence was not submitted before OOR issued its determination. Section 1101(c) requires a direct interest participant to submit materials prior to issuance of a final determination. State Emps. Ret. Sys. v. Pennsylvanians for Union Reform, 113 A.3d 9 (Pa. Cmwlth. 2015). Further, OOR may not accept evidence after a determination is issued. Fort Cherry Sch. Dist v. Coppola, 37 A.3d 1259, 1262 (Pa. Cmwlth. 2012); Dep't of Conservation & Natural Res. v. Vitali (Pa. Cmwlth., No. 1013 C.D. 2014, filed July 7, 2015) (unreported) (reasoning OOR did not err in disregarding evidence submitted with reconsideration petition). Accordingly, OOR properly did not consider PSU's evidence. Vitali.

26

PSU was permitted to participate in the appeal to OOR, the Department failed to further process or to identify the records at issue before the appeals officer's decision. Importantly, Requester's request was made on the Department, not PSU, and PSU was not in a position to know which records the Department deemed responsive. Only after the Department identified the records it intended to produce could PSU be expected to offer evidence supporting its privileges. PSU's privileges should not be placed at risk by the Department's failure. Vitali.

## C. Substantive Exemptions

The Department and PSU also contend that the Department provided sufficient evidence to OOR regarding the nature of the records to meet its burden to demonstrate the applicability of attorney-client privilege, work product doctrine and statutory exemptions under the RTKL. Notably, at the time OOR issued its Final Determination, the Department had not finished processing the Request.

Under the RTKL, records in possession of a Commonwealth agency are presumed to be public unless they are: (1) *exempt under Section 708 of the RTKL*; (2) "*protected by a privilege*;" or, (3) exempt under any other Federal or State law or regulation or judicial order or decree. Section 305 of the RTKL, 65 P.S. §67.305 (emphasis added). Section 102 of the RTKL defines "privilege" as:

> The attorney work-product doctrine, the <u>attorney-client privilege</u>, the doctor-patient privilege, the speech and debate privilege or other privilege recognized by a court incorporating the laws of this Commonwealth.

65 P.S. §67.102 (emphasis added). The burden of proving a privilege rests on the party asserting it. <u>Heavens v. Dep't of Envtl. Prot.</u>, 65 A.3d 1069 (Pa. Cmwlth.

27

2013). Similarly, pursuant to Section 708(a) of the RTKL, an agency bears the burden of proving the application of any of the exceptions within Section 708(b) by a preponderance of the evidence. See 65 P.S. §67.708(a).

## 1. Attorney-Client and Work-Product Privileges

In the RTKL context, we hold a party asserting the attorney-client privilege must establish the following four elements:

> (1) that the asserted holder of the privilege is or sought to become a client; (2) that the person to whom the communication was made is a member of the bar of a court, or his or her subordinate; (3) that the communication relates to a fact of which the attorney was informed by the client, without the presence of strangers, for the purpose of securing an opinion of law, legal services or assistance in a legal matter; and (4) that the claimed privilege has not been waived by the client.

Bagwell (2015), 114 A.3d at 1124; Chambersburg Area Sch. Dist. v. Dorsey, 97 A.3d 1281, 1289 (Pa. Cmwlth. 2014). The "attorney-client privilege protects from disclosure only those communications made by a client to his or her attorney which are confidential and made in connection with the providing of legal services or advice." Nationwide Mut. Ins. Co. v. Fleming, 924 A.2d 1259, 1264 (Pa. Super. 2007), aff'd by an equally divided court, 992 A.2d 65 (Pa. 2010) (emphasis deleted). Further, the privilege "protect[s] confidential client-to-attorney [and] attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." Gillard, 15 A.3d at 59.

Also in the RTKL context, we hold the work-product privilege "only applies to 'the mental impressions, theories, notes, strategies, research and the like

28

created by an attorney in the course of his or her professional duties ....'" Pa. Pub. Util. Comm'n v. Seder, 106 A.3d 193, 201 (Pa. Cmwlth. 2014) (emphasis added). "Neither privilege protects mere facts." Bagwell (2015), 114 A.3d at 1124. "The underlying purpose of the work[-]product doctrine is to guard the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case." Bagwell v. Dep't of Educ., 103 A.3d 409, 415-16 (Pa. Cmwlth. 2014), appeal denied, 117 A.3d 1282 (Pa. 2015) (quoting Commonwealth v. Sandusky, 70 A.3d 886, 898 (Pa. Super. 2013)).

Despite admitting that it had not yet reviewed the records "for the applicability of exemptions and redaction as appropriate[,]" the Department submitted the Tomalis Affidavit in support of its privilege claims. With respect to attorney-client privilege, the Tomalis Affidavit sets forth the attorney-client relationship and states:

> 10. In my capacity as Secretary of Education and as a PSU Board member, and during the time that is the subject of this request, I communicated with attorneys in OGC [(the Office of General Counsel)].

> 11. In their capacities as members of the Governor's cabinet and executive offices and as PSU Board members, and during the time that is the subject of this request, members of the Governor's cabinet and executive offices communicated with attorneys in OGC.
> 12. The records responsive to [Requester's] request that are in [the Department's] possession include communications made only between myself, members of the Governor's cabinet and executive offices, and attorneys in OGC and contain the mental impressions and/or opinions of those attorneys pertaining to issues presented to them for the purpose of seeking legal services or assistance in legal matters relating to my activities as Secretary of Education and as a PSU Board

29

member, and members of the Governor's cabinet and executive offices, and which were not for the purpose of committing a crime or tort.

13. The Commonwealth of Pennsylvania, [the Department] and I claim and have not waived the attorney-client privilege and attorney work-product privilege for records and information in the records that reflect those communications between myself, members of the Governor's cabinet and executive offices, and attorneys in OGC, and that contain the mental impressions and/or opinions of those attorneys pertaining to issues presented to them for the purpose of seeking legal services or assistance in legal matters relating to my activities as Secretary of Education and as a PSU Board member and the activities of the members of the Governor's cabinet and executive offices.

R.R. at 38a-39a.

As to the work product doctrine, the Tomalis Affidavit states:

16. The records responsive to [Requester's] request that are in [Department's] possession include communications made only between [legal counsel retained by PSU to represent PSU and the Board], PSU executive staff and Board members, and myself, and contain the mental impressions and/or opinions of those attorneys pertaining to issues presented to them for the purpose of seeking legal services or assistance in legal matters relating to the activities of PSU, and which were not for the purpose of committing a crime or tort.

R.R. at 39a. Former Secretary also attested he did not waive the privilege, and he was "informed PSU has claimed and has not waived the attorney-client privilege and attorney work-product privilege …." Id.

30

Notably, the Department did not submit a privilege log to OOR or to this Court identifying the relevant documents. As a result, neither OOR nor this Court had sufficient information to evaluate the exemptions. Office of the Governor v. Davis, 122 A.3d 1185 (Pa. Cmwlth. 2015) (en banc). This may be because the Department had not yet "review[ed] the records for applicability of exemptions and redaction as appropriate." R.R. at 28a. We find it perplexing that the Department claims unspecified records are privileged while simultaneously admitting it did not review the records. The Tomalis Affidavit is conclusory and vague. It does not describe the records with any particularity as to how the privilege supports non-disclosure or redaction of the 644 pages of allegedly responsive records. For these reasons, we conclude the Department failed to establish the responsive records fall within the attorney-client privilege or the work product doctrine.

## 2. RTKL Exceptions

The Department also asserted the predecisional deliberative exception in Section 708(b)(10)(i) of the RTKL, 65 P.S. §67.708(b)(10)(i), and the noncriminal investigative exception in Section 708(b)(17) of the RTKL, 65 P.S. §67.708(b)(17). The Department submitted only the Tomalis Affidavit to support its assertion of the predecisional deliberative exception. That exception protects:

> A record that reflects:
>
> (A) The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation,

31

> legislative proposal, legislative amendment, contemplated or <u>proposed policy or course of action</u> or any research, memos or other documents used in the predecisional deliberations.

65 P.S. §67.708(b)(10)(i)(A) (emphasis added).

To establish this exception, an agency must show: (1) the information is internal to the agency; (2) the information is deliberative in character; and, (3) the information is prior to a related decision, and thus "predecisional." <u>Carey v. Dep't of Corr.</u>, 61 A.3d 367 (Pa. Cmwlth. 2013). "Only information that constitutes 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice' is protected as 'deliberative.'" <u>Id.</u> at 378 (quoting <u>In re Interbranch Comm'n on Juvenile Justice</u>, 988 A.2d 1269, 1277-78 (Pa. 2010) (quotation omitted)). Records satisfy the "internal" element when they are maintained internal to one agency or among governmental agencies. <u>Id.</u>

"[T]o demonstrate that the withheld documents are deliberative in character, an agency must 'submit evidence of specific facts showing how the information relates to deliberation of a particular decision.'" <u>McGowan</u>, 103 A.3d at 383 (quoting <u>Carey</u>, 61 A.3d at 379). Affidavits that are conclusory or merely parrot the exemption do not suffice. <u>Office of the Governor v. Scolforo</u>, 65 A.3d 1095 (Pa. Cmwlth. 2013) (<u>en</u> <u>banc</u>).

In support of this exception, the Tomalis Affidavit states the records include communications that are internal between agencies under the Governor's jurisdiction, and internal to PSU and executive agencies with respect to the Former Secretary's role as an *ex-officio* Board member. As to content, it provides:

21. The communications and consultations were made for the purpose of discussions and deliberations on decisions to be made by me and other members of the Governor's cabinet and executive offices, and prior to the decisions being made.

22. The decisions relate to actions to be taken by me, [Department], or the members of the Governor's cabinet and executive offices on budget recommendations, legislative proposals, legislative amendments, or contemplated or proposed policies or courses of action.

23. The records or information in the records reflect the internal, predecisional deliberations by me and between me and members of the Governor's cabinet and executive offices and include research, memos or other documents used in the predecisional deliberations.

****

26. The communications and consultations were made for the purpose of discussions and deliberations on decisions to be made by me and other members of the Governor's cabinet and executive offices that served as statutory *ex-officio* members of the PSU Board, and prior to the decisions being made.

27. The decisions relate to actions to be taken by me or the members of the Governor's cabinet and executive offices that served as statutory *ex-officio* members of the PSU Board on budget recommendations or contemplated or proposed policies or courses of action relating to PSU.

28. The records or information in the records reflect the internal, predecisional deliberations by me and between me and members of the Governor's cabinet and executive offices, including those that served as statutory *ex-officio* members of the PSU Board, and include research, memos or other documents used in the predecisional deliberations.

R.R. at 39a-40a.

33

From our review, the affidavit contains general statements parroting the elements of the exception. As the Department has not even "review[ed] the records for applicability of exemptions[,]" R.R. at 28a, it did not submit sufficient facts to show the deliberative character of the records. As all three elements are required to prove this exception, Carey, the Department did not meet its burden.

As to the noncriminal investigative exception, OOR determined the Department did not meet its burden of proving the exception as required by Section 708(a) of the RTKL. We agree.

Section 708(b)(17) protects records relating to a noncriminal investigation. Significantly, the exception does not require the investigation to be conducted by the agency responding to the request. However, the agency asserting the exception must show that a searching inquiry or detailed examination was undertaken as part of an agency's official duties. Johnson v. Pa. Convention Ctr. Auth., 49 A.3d 920 (Pa. Cmwlth. 2012). Stating that an investigation occurred, as the Department does here, does not suffice. Heavens. As the Department failed to submit any evidence to support this exception, OOR did not err in determining it did not meet its burden of proof.

**D. Bifurcation**

Both the Department and PSU argue OOR should have bifurcated the appeal to first address whether the Department properly demanded prepayment. After determining the prepayment issue, they contend OOR then should have

34

permitted the Department and PSU an opportunity to develop a record to support substantive exemptions. We reject this contention.

First, the timing for the appeals process does not afford an appeals officer the luxury of a two-part procedure. The statutory deadline for issuing a final determination allows 30 days unless a requester agrees to a further extension. Section 1101(b)(1), 65 P.S. §67.1101(b)(1). This Court explained:

> [T]he statutory procedures in the RTKL are 'designed to dispose of most disputes in an efficient and timely fashion.' Bowling [v. Office of Open Records, 75 A.3d 453, 474 (Pa. 2013).] … Section 1101(b)(1) of the RTKL requires an appeals officer to issue the final determination within thirty days of receipt of the appeal, '[u]nless the requester agrees otherwise.' Section 1101(b)(2) of the RTKL provides that failure of the appeals officer to issue a timely final determination is treated as a deemed denial. The fact that the General Assembly chose to include the deemed denial language in the statute bolsters our conclusion that the statutory deadline imposed on OOR to issue a final determination is essential to the statutory purpose of the RTKL.

SERS v. PFUR, 113 A.3d at 20. Moreover, it is well-established that:

> [A]n agency must raise all its challenges before the fact-finder closes the record. This will allow efficient receipt of evidence from which facts may be found to resolve the challenges. In the ordinary course of RTKL proceedings, this will occur at the appeals officer stage, and a reviewing court will defer to the findings of the appeals officer.

Levy v. Senate of Pa. (Levy III), 94 A.3d 436, 441-42 (Pa. Cmwlth. 2014).

In addition, there is no statutory authority for a two-step process. Vitali. This Court recently rejected an agency's challenge to OOR's refusal to bifurcate proceedings to resolve an issue of insufficient specificity separate from the merits. We rejected bifurcation as infeasible given the timelines under the RTKL. This Court also reasoned an agency had ample opportunity to present evidence of substantive exemptions at the appeals officer level. When the agency did not submit evidence of exemptions, and rested on its specificity argument, this Court precluded the agency from submitting evidence of any exemptions on remand. Id.

In sum, given the strict timeframes set forth in the RTKL and the legislative intent to foster expeditious resolution of RTKL disputes, we conclude OOR properly refused to bifurcate its proceedings. Vitali.

**E. Attorney Fees**

Lastly, Requester seeks attorney fees pursuant to Section 1304(a) of the RTKL, 65 P.S. §67.1304(a). That section allows a court to award attorney fees if the court reverses a final determination or grants access when either: (1) an agency acted with willful or wanton disregard of the right to access in bad faith; or, (2) an agency's denial was not based on a reasonable interpretation of law. Id.

Requester contends the Department acted in bad faith when it issued an "interim" as opposed to a final response on the stated response date. He contends our decision in Drack placed the Department on notice that a final response must contain applicable exemptions, and must be issued within 30 days.

36

Although the Department was on notice that <u>Drack</u> prohibited agencies from reserving exemptions to an unspecified date in the future, this case presents novel facts. Further, the RTKL's lack of explicit timeframes for an agency to demand prepayment under Section 1307(h) supports the Department's contention that it did not act unreasonably or in bad faith in demanding prepayment outside the five-day notice. Also, because the Department's assertion of the privileges was not based on an unreasonable interpretation of law, we decline to award fees against the Department.

As we held in another RTKL appeal involving identical parties, "evidence of bad faith" by the Department or by PSU is necessary to impose fees on that basis. <u>Bagwell</u>, 103 A.3d at 421. There is no such evidence here. <u>Id.</u>; <u>Dorsey</u>.

Further, we affirm OOR as to its determination that the Department did not meet its burden of proving the substantive exemptions. However, we remand to allow PSU a meaningful opportunity to establish the attorney privileges.[13] Thus, we neither reverse OOR nor grant access in this opinion, one of which is a precondition to a fee award under Section 1304(a).

Additionally, Requester asks this Court to award attorney fees against PSU for pursuing a direct appeal and intervening when it did not submit evidence

---

[13] PSU did not brief any exemptions other than the attorney-client privilege or work-product doctrine. Therefore, only these privilege claims were preserved.

to OOR before the record closed. Requester contends PSU should be sanctioned for filing a frivolous appeal under Section 1304(b) of the RTKL, 65 P.S. §67.1304(b). As previously discussed, the Department's failure to identify the responsive documents hampered PSU's ability to provide evidence to support exemptions. Accordingly, we do not deem PSU's appeal or intervention frivolous. For these reasons, we decline to award attorney fees.

## III. Conclusion

Based on the foregoing, we affirm in part, and vacate and remand in part as to PSU. Specifically, we affirm OOR's determination that the Department did not establish any exemptions. However, disclosure shall be held in abeyance pending remand to OOR to allow PSU to establish the application of the attorney privileges. In addition, the Department is directed to identify and produce to PSU all responsive documents within five days of this order.

ROBERT SIMPSON, Judge

Judges Leadbetter and Cohn Jubelirer did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Department of Education,

                Petitioner

        v.                  :   No. 1617 C.D. 2014

Ryan Bagwell,

                Respondent

Pennsylvania State University,

                Petitioner

        v.                  :   No. 1729 C.D. 2014

Ryan Bagwell,

                Respondent

## O R D E R

**AND NOW**, this 29th day of January, 2016, the Office of Open Records' (OOR) August 13, 2014 Final Determination is affirmed in part, and vacated and remanded in part. OOR's final determination as to the Department of Education (Department)'s asserted exemptions is affirmed. However, OOR's order to disclose to Ryan Bagwell (Requester) all responsive documents is held in abeyance and subject to the following limitation to afford the Pennsylvania State University (PSU) a meaningful opportunity to protect the records. This matter is remanded to the OOR. Within five business days of the date of this Order, the Department shall identify and produce to PSU complete copies of all responsive documents. Thereafter, OOR shall afford PSU a reasonable opportunity to review the identified documents and to present evidence concerning PSU's alleged privileges.

OOR shall issue a determination regarding the validity of PSU's asserted privileges and exemptions within 180 days of the date of this order. Those documents which OOR determines are protected by privilege shall not be disclosed by the Department to Requester. PSU may appeal any directed disclosure in accordance with the RTKL.

Jurisdiction is relinquished.

_____
ROBERT SIMPSON, Judge