# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carrie Hahn,                :
            Appellant     :
                        :
         v.              :    No. 593 C.D. 2021
                        :    Submitted: February 4, 2022
Wilmington Township        :

BEFORE:     **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                **HONORABLE ELLEN CEISLER,** Judge
                **HONORABLE STACY WALLACE,** Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**       **FILED: January 3, 2023**

Carrie Hahn (Requester) appeals, pro se, from the Court of Common Pleas of Lawrence County's (trial court) April 21, 2021 Order granting in part and denying in part Requester's appeal from the Office of Open Record's (OOR) Final Determination. On appeal, Requester argues that the trial court erred or abused its discretion in: denying disclosure of requested legal invoices based on its conclusion that those invoices did not exist; denying disclosure of certain records because they were protected by attorney-client privilege and/or the work-product doctrine; rendering evidentiary decisions regarding testimony Requester sought to elicit and its *in camera* review of certain records; failing to find that Wilmington Township (Township) acted in bad faith; and not ordering the Township to provide the documents during the pendency of this appeal. After review, we affirm.

## I. BACKGROUND

### A. *The Request and Denial*

On December 5, 2019, Requester filed a Right-to-Know Law (RTKL)[1] request (Request) with the Township seeking:

> Item 1: All invoices from attorneys Burke, Cromer and Cremonese [(BCC)].
>
> Item 2: All correspondence between [T]ownship officials/solicitor and attorneys to and from [BCC] (as identified in the Solicitor's invoices beginning December 11, 2018).
>
> Item 3: All correspondence between Solicitor and [T]ownship officials regarding communications with attorneys from [BCC].

(Original Record (O.R.) at 160; Reproduced Record (R.R.) at 1a.) Tracey Deal, the Township's Right-to-Know Officer (RTKO) at the time, denied the Request by letter dated December 10, 2019. The request for records in Item 1 (Invoices) was denied because "[t]here [were] no invoices from [BCC] in the Township's possession, custody or control." (R.R. at 15a.)[2] The requests for records in Items 2 and 3 (Correspondence) were denied because they were "subject to the attorney-client privilege and/or the attorney work-product doctrine" thereby exempt under Section 102 of the RTKL, 65 P.S. § 67.102. (*Id.*) Requester filed a timely appeal of the decision to the OOR. (O.R. at 158-59.)

### B. *Appeal to the OOR*

Requester filed an appeal to the OOR wherein she explained that the records at issue are "[i]nvoices from 3rd party attorneys and all correspondence between 3rd

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104

[2] The Township did provide redacted invoices from its solicitor. (*See* R.R. at 48a-52a.)

party attorneys, [the S]olicitor and [T]ownship officials." (*Id.* at 158.) Requester asserted that the Township "acknowledges correspondence exists but makes unsupported, bald assertions[] that all correspondence [are] subject to attorney-client privilege and/or attorney work[-]product, failing to prove by a preponderance of evidence that the records are privileged." (*Id.* at 158-59.) Requester argued that her appeal shows a repeated pattern of "bad faith and [an] abuse of discretion by the" Township. (*Id.* at 159.) Both the Township and Requester submitted responses in support of their positions.

### 1. The Township's Submissions

The Township submitted a letter in response to Requester's appeal along with an attestation of the Township's RTKO in support of the denial of the Request. In the letter, the Township explained that, as to the Invoices, the Township's RTKO "performed a good faith search of Township records, to include the Township's physical files and correspondence, as well as the Township's email account . . . ." (R.R. at 18a.) Additionally, the Township solicitor (Solicitor) was notified and "[a] search was performed of [his] files and office email account . . . ," and "[n]o such records were located within the possession, custody or control of the Township." (*Id.*) With respect to the Correspondence sought, the Township explained that it denied these records as being protected under the attorney-client privilege and/or work-product doctrine. (*Id.*) The Township stated that during the January 7, 2019 meeting of the Township Board of Supervisors, the Township agreed to retain BCC. (*Id.* at 19a.) As a result, the Township explained that the Correspondence sought by Requester were those "made by the client ([the] Township and/or its Solicitor acting on behalf of the Township) to its attorney(s) (the firm [BCC]) seeking an opinion of law, legal services or assistance in a legal matter," and the communications "were

3

made privately, by and between the Township and its legal counsel." (*Id.*) Thus, the Township contended the communications are protected by the attorney-client privilege and/or the work[-]product doctrine, "as [the Correspondence] would reveal the mental impressions, legal strategy, and research undertaken at the request of the client, [the] Township," and these privileges had not been waived. (*Id.*) With respect to Requester's allegations of bad faith and abuse of discretion, the Township argued that Requester "has provided no information to support such outrageous allegations." (*Id.*) The Township further explained that it "received [Requester's] [R]equest, conducted a review of its records, notified the Solicitor and outside counsel of the [R]equest, and provided a response to [Requester] within the required time-frame." (*Id*. at 19a-20a.) As a result, the Township "strongly object[ed] to [Requester's] characterization of its activities as in bad faith or an abuse of discretion." (*Id.* at 20a.)

### 2. Requester's Response

Requester responded, arguing that, contrary to the RTKO's assertion that the Invoices did not exist, the Solicitor "had numerous correspondence with [Attorney] Cromer of [BCC]" as evidenced by the Invoices submitted in the appeal. (*Id.* at 30a.) Requester argued that, as the agent of the Township, "any [I]nvoices that [the Solicitor] or his office staff may have received from [the] attorneys [of BCC] are within the possession, custody and control of the Township." (*Id.*) Additionally, Requester contended that the Solicitor failed to provide "evidence that he ha[d] notified the third-party law firm or Attorney Cromer as required under [Section 1101(c) of the RTKL,] 65 P.S. [§] 67.1101(c)." (*Id.* at 30a-31a.) Thus, Requester maintained that neither the Township's Solicitor nor the RTKO conducted a good faith search for the Invoices.

4

Requester also argued that the Solicitor and RTKO acted in bad faith. Specifically, Requester contended that the sworn affidavit by the RTKO "does not identify which [a]gency personnel she contacted, nor did she provide any documentation that she contacted anyone other than [the] Solicitor []." (*Id.* at 31a.) Requester also argued that the Solicitor did not submit a sworn affidavit to the OOR affirming he had conducted a good faith search for the response, nor did Attorney Cromer or his associates provide an affidavit "to affirm that his office has not submitted any Invoices to either the [T]ownship, [the] Solicitor [] or his office." (*Id.*)

As it relates to the Correspondence and the privileges the Township invoked, Requester contended that "[s]imply asserting that [a] privilege applies generally to the records as a whole is insufficient to meet an agency's burden," and asked that the OOR conduct an *in camera* review of the records. (*Id.* 32a.) Requester argued that the Township's RTKO did not "provide[] any evidence regarding the number of records, the dates on which they occurred, or contents of these records and how the attorney[]work product is applied," and that the RTKO used "'and/or' regarding two distinctly different privileges in a blanketed, shot gun attempt to assert some kind of privilege over the requested documents." (*Id.* at 33a.)

Finally, Requester argued that the Township's decision to hire BCC "was done in an effort to silence dissent," namely by Requester and James and Judi Hartzler, who had filed procedural validity challenges to the Township's adoption of an oil and gas amendment to its zoning ordinance. (*Id.*) Requester asserted that "[a]fter more than a year, and numerous threats by [T]ownship officials, the Township ha[d] yet to take formal action against [Requester] or the Hartzlers," and that the [I]nvoices from the Solicitor "confirm[ed] that the [T]ownship ha[d] corresponded with [BCC] to pursue an illegal action at the expense of [the]

taxpayers." (*Id.*) Requester contended that the records she is seeking "are within the possession of the Township, [the Solicitor] and/or Attorney Cromer," and the "[e]vidence submitted by [] Requester show[ed] that [the] Township ha[d] acted in bad faith by denying the requested records and that conclusory statements and bald assertions of privilege are insufficient as a matter of law." (*Id.*)

### 3. The OOR's Final Determination[3]

On July 20, 2020, after several extensions, the OOR issued its Final Determination. In its decision, the OOR determined that the Township proved that the [I]nvoices do not exist within its possession, custody or control based on the RTKO's sworn statement. With regard to Requester's assertion that no good faith search occurred, citing this Court's decision in *Uniontown Newspapers, Inc. v. Pennsylvania Department of Corrections*, 185 A.3d 1161 (Pa. Cmwlth. 2018), for the meaning of "good faith effort," the OOR concluded that the Township "demonstrated that a good faith search was conducted, in that [the Solicitor] directed the Township's [RTKO] to search the Township's physical files and business email account." (OOR's Final Determination at 7.) Additionally, the OOR explained that the Solicitor "searched his firm's physical files, both of his email accounts and inquired of [BCC]." (*Id.*) Based on this evidence, the OOR concluded that the Township has "demonstrated that no legal invoices responsive to Item 1 of the Request exist within its possession, custody or control." (*Id.*)

With respect to the work-product doctrine and attorney-client privilege, the OOR determined that certain of the responsive records were exempt from disclosure pursuant to Section 102 of the RTKL. The OOR relied on the attestations of both

---

[3] The OOR's Final Determination is located at pages 1a-13a of the Reproduced Record and pages 322-44 of the Original Record.

6

the Township's RTKO and the Solicitor, along with the meeting minutes from the January 7, 2019 meeting, as showing the Township sought to become a client of BCC. (*Id.* at 9-10.) It then conducted an *in camera* review of the responsive records, which "consist[ed] of emails, attachments and faxed documents dating from January 4, 2019[,] through August 1, 2019." (*Id.* at 10-11.) The OOR concluded, based on the evidence presented, that "the Township has demonstrated [] it became the client of the firm [BCC] and that . . . [the] Solicitor[] communicated with Attorney Cromer on behalf of the Township." (*Id.* at 11.) The OOR found that the evidence also established that "the privilege held by the Township ha[d] not been waived." (*Id.*)

Upon its review of the records, the OOR concluded that the following were protected by the privilege or consisted of work product: "Item 1 Bates number 0001-0005[;] Item 6, Bates number 0010-0013[;] Item 10, Bates number 0113-0124[;] Items 11-12, Bates number 0125-0126[; and] Item 15, Bates number 0129-0143[,]" because disclosing these records "would reveal communications relating to the Township's seeking to become a client, as well as legal advice or strategy and attorney memoranda, legal summaries, research and theories." (*Id.*) The OOR held that the balance of the records were not protected by the work-product doctrine or attorney-client privilege explaining that the records, "on their face, . . . consist of routine scheduling and transmittal correspondence or are comprised of factual information that is not protected by privilege." (*Id.* at 11-12 (citing *Pa. Dep't of Educ.v. Bagwell*, 114 A.3d 1113, 1124 (Pa. Cmwlth. 2015)).) The OOR further explained that "[t]he communications neither seek [n]or render legal advice, nor do they disclose any attorney legal research, strategy, advice or attorney theories, mental impressions, conclusions, or opinions." (*Id.* at 12.) Thus, the OOR granted in part and denied in part Requester's appeal and ordered the Township to "provide

unredacted copies of all records responsive to Items 2 and 3 of the Request determined [] to be non-privileged within thirty days." (*Id.* at 13.) Requester then appealed to the trial court.

## C. *Appeal to the Trial Court*

Requester appealed the OOR's Final Determination to the trial court, which, after a hearing, affirmed in part and reversed in part the OOR's Final Determination. At the hearing, Requester called Judith Hartzler, the Solicitor, and Attorney Cromer to testify on her behalf. With respect to the Invoices, the Solicitor testified that "he had not received any invoices from Attorney Cromer requesting payment for services rendered, nor had he made any payment to Attorney Cromer for services rendered on behalf of [the] Township." (Trial Ct. Opinion (Op.) at 8.[4]) Additionally, the Solicitor testified, under oath, "that he had no invoices from Attorney [] Cromer, that he had reviewed his office files, and had reviewed all of his email accounts, and never [] received anything from Attorney [] Cromer[.]" (Trial Court 1925(a) Op. at 5.[5]) Attorney Cromer testified that his firm did not submit any invoices to the Township "for payment for any services rendered to the [T]ownship, nor had his law firm received any payment from [the] Township." (Trial Court Op. at 7.) Additionally, Attorney Cromer testified "that his law firm had not submitted any [I]nvoice to [the Solicitor] [n]or had his law firm received any payment from [the Solicitor]." (*Id.*)

Based on the evidence presented, the trial court concluded that the OOR's determination on the Invoices was correct. (*Id.* at 8.) In so concluding, the trial

---

[4] The trial court's April 21, 2021 opinion is attached to Requester's Brief.

[5] The trial court issued an opinion in accordance with Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), on August 19, 2021, which is Item 32 in the Original Record.

8

court relied on the attestations of the RTKO indicating that the Invoices did not exist, and the testimony of both the Solicitor and Attorney Cromer, "neither of which supported [Requester's] position." (*Id.* at 6-7.) Thus, the trial court held that the OOR's determination as to the existence of the Invoices "was appropriate, supported by factual evidence, and was supported by additional evidence elicited by [Requester] in the presentation of her case." (*Id.* at 8.)

With respect to the OOR's decision regarding the work-product doctrine and attorney-client privilege protecting certain responsive records, the trial court agreed in part that certain responsive records were protected by the attorney-client privilege and/or work-product doctrine. In reaching this conclusion, the trial court conducted its own *in camera* review of the records[6] and specifically found the following to be protected by the attorney-client privilege and/or the work-product doctrine: "Item No. 1, Bates No. 0001-0005; Item No. 6, Bates No. 0010-0013; Item No. 10, Bates No. 0113-0124; [and] Item No. 15, Bates No. 0129-0143." (*Id.* at 9.) The trial court overruled the OOR's determination "as to Items 11-12, Bates Nos. 0125-0126." (*Id.* at 10.) The trial court agreed with the rest of the OOR's determination that the other responsive records had not been properly withheld. (*Id.*)

Finally, the trial court considered Requester's argument that the attorney-client privilege had been waived under the crime-fraud exception because the Township acted in bad faith and that the Board of Supervisors, the Solicitor, and Attorney Cromer "conspired to violate her first amendment right of freedom of speech by threatening to file a [Strategic Lawsuit Against Public Participation [(]SLAPP[)]] lawsuit against her relative to the litigation in the [trial court], relative

---

[6] At the hearing, the Solicitor resubmitted the *in camera* documents reviewed by the OOR to which Requester objected because there was no way to determine that the records being submitted were the records reviewed by the OOR. (*See* Notes of Testimony at 78-79.)

9

to the [Township's] oil and gas lease [ordinance]." (*Id.* at 11.) In concluding that the crime-fraud exception was inapplicable, the trial court explained:

> Nothing in the [trial c]ourt's *in camera* review of the documents . . . leads the [c]ourt to believe that in any manner the crime[-]fraud exception to the attorney[-]client privilege is present in this case in any manner, as the advice of counsel solicited by [the] Township was not for the furtherance of [the] commission of a criminal or fraudulent activity.

(*Id.*) Requester timely appealed to this Court.

## II. DISCUSSION

This Court's review[7] of a RTKL appeal from a trial court's order is to determine "whether the trial court committed an error of law and whether its findings of fact are supported by substantial evidence." *Paint Twp. v. Clark*, 109 A.3d 796, 803 n.5 (Pa. Cmwlth. 2015). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dep't of Env't Res. v. Borough of Carlisle*, 330 A.2d 293, 298 (Pa. Cmwlth. 1974). On appeal, Requester raises multiple challenges to the trial court's: (1) determinations on the Invoices; (2) determinations on the Correspondence; (3) evidentiary decisions regarding testimony Requester sought to elicit and its *in camera* review of certain records; (4) failure to find that the Township acted in bad faith; and (5) failure to order the Township to provide the requested documents during the pendency of this appeal. The Court will address these challenges in turn.

---

[7] Requester erroneously asserts that this Court's review of this appeal is de novo. (*See* Requester's Brief at 3 (citing *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 477 (Pa. 2013)).) Where a RTKL appeal is taken from the trial court, this Court looks to whether the trial court committed an error of law and whether the findings of fact are supported by substantial evidence. *See California Borough v. Rothey*, 185 A.3d 456, 462 n.6 (Pa. Cmwlth. 2018) (quoting *Paint Twp. v. Clark*, 109 A.3d 796, 803 n.5 (Pa. Cmwlth. 2015)).

10

*A. Invoices*

      1. Parties' Arguments

Requester, citing Section 506(d)(1) of the RTKL, 65 P.S. § 67.506(d)(1) (indicating that records in possession of a party with whom an agency has contracted to perform a governmental function are in the possession of the agency), argues that the Invoices are producible under the RTKL and that the Township has failed to provide sworn affidavits or evidence to the trial court that is sufficient to uphold the denial of the Invoices. (Requester's Brief (Br.) at 19.)[8] The evidence presented, Requester asserts, was insufficient to find that the Township did not have possession, custody, or control of the Invoices in Item 1. With respect to the Solicitor's attestation, Requester argues the Solicitor focused only on Items 2 and 3 of the Request and does not mention Invoices, and he submitted an unsworn statement that was insufficient to show that the Township did not have possession, control, or custody of the Invoices. (*Id.* at 22, 29-30.) Requester also asserts that the privilege log submitted by the Solicitor failed to reference the Invoices, and that the Township, through the Solicitor, provided statements that were inconsistent with respect to the Invoices. (*Id.* at 22, 31.)

The Township argues that the trial court's determination is supported by the testimony from both the Solicitor and Attorney Cromer, which "clearly indicated no invoice had been prepared by Attorney Cromer, nor had any invoice been submitted to the Township or [the Solicitor]." (Township's Br. at 20-21.) The Township asserts that Requester did not introduce contrary evidence, and the trial court did not

---

[8] Many of Requester's arguments relate to the proceedings before the OOR and its Final Determination; however, this Court is not reviewing the OOR's Final Determination. Rather, we are reviewing the trial court's de novo review of the OOR's Final Determination. Thus, we set forth the arguments asserting error by the trial court, rather than the OOR.

abuse its discretion when it concluded that the Invoices were not in the Township's possession, custody, or control. (*Id.* at 21.) The Township contends that an agency is not required to produce a record that does not exist and that the evidence presented at the hearing before the trial court "show[ed] conclusively that no such [I]nvoices exist within the possession, custody or control of the Township[,]" or elsewhere. (*Id.*) The Township argues that Requester "misconstrues the legal requirement of the Township to search for all responsive records in its possession, custody or control, with the simple factual statement offered at the hearing that no such [I]nvoices exist." (*Id.* at 22.) The Township, therefore, argues that the trial court's decision that the Invoices did not exist is supported by substantial evidence. (*Id.* at 22-23.)

### 2. Analysis

The RTKL was enacted to "promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions . . . ." *Bowling v. Off. of Open Recs.*, 990 A.2d 813, 824 (Pa. Cmwlth. 2010), *aff'd*, 75 A.3d 453 (Pa. 2013). Pursuant to Section 302(a) of the RTKL, 65 P.S. § 67.302(a), local agencies are required to "provide public records" to requesters "in accordance with [the RTKL]." The term "public record" is defined as "[a] record, including a financial record, of a . . . local agency that: (1) is not exempt under [S]ection 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." 65 P.S. § 67.102. "A record in the possession of a . . . local agency shall be presumed to be a public record." Section 305 of the RTKL, 65 P.S. § 67.305.

The RTKL requires that the agency "shall make a good faith effort to determine if the record requested is a public record, . . . and whether the agency has possession, custody or control of the identified record[.]" Section 901 of the RTKL, 65 P.S. § 67.901. Section 705 of the RTKL provides that an agency responding to a RTKL request "shall not be required to create a record **which does not currently exist** or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record." 65 P.S. § 67.705 (emphasis added). Thus, the proper standard under Section 705 is "whether such a record is in **existence and in possession** of . . . [a local] agency at the time of the [RTKL] request." *Moore v. Off. of Open Recs.*, 992 A.2d 907, 909 (Pa. Cmwlth. 2010) (emphasis added). In *Moore*, the Department of Corrections denied a request for a requester's judgment of sentence on the grounds that the record did not exist and, therefore, the agency was not required to create it. The Department of Corrections submitted both sworn and unsworn affidavits explaining that it did not have this record in its possession. This Court concluded that these "statements [were] enough to satisfy the Department[ of Corrections'] burden of demonstrating the non-existence of the record in question." *Id.*

In the present case, Requester sought Invoices from BCC for work it allegedly performed in connection with potential litigation against Requester and others. The trial court found that the Township met its burden of proof in showing that the Invoices did not exist. The trial court, citing the testimony from both the Solicitor and Attorney Cromer, explained that neither witness supported Requester's position, and both indicated that there were no invoices sent to the Township for legal work. (Trial Court Op. at 7-8.) The trial court further credited the attestation submitted by the Township's RTKO wherein she indicated she searched the Township's physical

13

files and email addresses, as well as reaching out to the Solicitor, and determined that the Invoices do not exist. (*Id.* at 6-7.) With respect to affidavits, "[t]his Court has stated that an agency may satisfy its burden of proof that it does not possess a requested record with either an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record." *Hodges v. Pa. Dep't of Health*, 29 A.3d 1190, 1192 (Pa. Cmwlth. 2011) (citing *Moore*, 992 A.2d at 908-09). Because a reasonable mind might accept the credited attestation of the RTKO and testimony of Attorney Cromer and the Solicitor as adequate to support the conclusion that the Invoices do not exist either in the Township's possession, custody, or control, or at all, the trial court's finding is supported by substantial evidence. *Borough of Carlisle*, 330 A.2d at 298. Accordingly, we discern no error in the trial court's decision that the Invoices did not exist.

## B. Correspondence

### 1. Parties' Arguments

Requester argues that the trial court erred in concluding that the Township could withhold the Correspondence based on privilege. Specifically, Requester contends that the Township's claim of privilege under Section 102 of the RTKL, 65 P.S. § 67.102, is a "ruse" and an abuse of the privilege exemption to deny Requester the Correspondence. (Requester's Br. at 31.) Requester asserts that the Township's privilege log "lack[ed] sufficient detail to substantiate [the] privilege exemptions and failed to explain how each exemption applied to the withheld records," and that the Correspondence were improperly withheld under Section 102, because "courts have consistently held that privilege does not protect facts." (*Id.* at 32-33.) Requester argues that the trial court failed to review all the information relating to her Request and, as a result, "the [Township's] information was given greater weight

14

thereby tipping the scale and the burden of proof back to [] Requester which is contrary to the RTKL." (*Id.* at 39.) Thus, Requester argues that the Township failed to prove, by a preponderance of the evidence, that the Correspondence were exempt under either the attorney-client privilege or work-product doctrine. Requester further argues that the trial court erred in finding that the crime-fraud exception was not applicable so as to waive the attorney-client privilege. Specifically, Requester asserts that the crime-fraud exception applies because the Township violated the Sunshine Act[9] and improperly withheld the Correspondence, which "support[s] arguments of bad faith and the [c]rime-[f]raud [e]xception." (*Id.* at 47.)

The Township argues that the trial court did not abuse its discretion in withholding certain records as being privileged because the trial court's determinations were supported by substantial competent evidence and its own *in camera* review. The Township explains that Attorney Cromer credibly testified that he was retained by the Township and that he met with the Board of Supervisors during an executive session to discuss potential litigation. The Township asserts that these communications were made by the Township to its legal counsel in an effort to seek the legal guidance of its counsel and was done so privately. Thus, the Township contends that these communications are protected by the attorney-client privilege and/or the work-product doctrine because disclosing the Correspondence "would reveal the mental impressions, legal strategy, and research undertaken" by its counsel at the behest of the Township as client. (Township's Br. at 13-14.) The Township further argues that Requester's claims about evidence submitted to the OOR are irrelevant because the trial court conducted a de novo hearing, heard testimony from both Attorney Cromer and the Solicitor, and conducted its own

---

[9] 65 Pa.C.S. §§ 701-716.

analysis of whether the documents were exempt under privilege. According to the Township, the trial court correctly held that Requester's argument that the crime-fraud exception applies was without merit after its *in camera* review. The Township asserts that Requester's arguments that the Township acted in bad faith by failing to disclose responsive records, violated the Sunshine Act, and waived privilege are without merit and are not supported by any evidence of record. The Township contends that because Requester did not introduce any evidence before the trial court showing fraudulent or criminal behavior on behalf of the Township, the trial court properly dismissed these arguments.

2. Analysis

Records in the possession of a local agency are presumed to be public unless the records are protected by a privilege. 65 P.S. § 67.305(a)(2). Section 102 of the RTKL defines privilege as including, among others, "[t]he attorney work-product doctrine [and] the attorney-client privilege, . . . ." 65 P.S. § 67.102. Additionally, Section 506(c)(2) of the RTKL provides that "[a]n agency may exercise its discretion to make any otherwise exempt record accessible for inspection and copying under [the RTKL], if . . . [t]he record is not protected by a privilege." 65 P.S. § 67.506(c)(2). "The burden of proving a privilege rests on the party asserting it." *Off. of the Governor v. Davis*, 122 A.3d 1185, 1191 (Pa. Cmwlth. 2015) (citing *Heavens v. Dep't of Env't Prot.*, 65 A.3d 1069 (Pa. Cmwlth. 2013)).

In the context of the RTKL, the work-product privilege "only applies to the mental impressions, theories, notes, strategies, research and the like created by an attorney in the course of his or her professional duties . . . ." *Pa. Dep't of Educ. v. Bagwell*, 131 A.3d 638, 657 (Pa. Cmwlth. 2016) (internal quotations and emphasis omitted). The purpose of the work-product privilege is to "guard the mental

16

processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case." *Id.* (internal quotations omitted). With respect to the attorney-client privilege, to establish this privilege, an agency must show:

> (1) that the asserted holder of the privilege is or sought to become a client; (2) that the person to whom the communication was made is a member of the bar of a court, or his or her subordinate; (3) that the communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing an opinion of law, legal services or assistance in a legal matter; and (4) that the claimed privilege has not been waived by the client.

*Id.* at 656. "[A]fter an agency establishes the privilege was properly invoked under the first three prongs, the party challenging invocation of the privilege must prove waiver under the fourth prong." *Davis*, 122 A.3d at 1192.

The attorney-client "privilege only applies where the client's ultimate goal is legal advice." *Nat'l R.R. Passenger Corp. v. Fowler*, 788 A.2d 1053, 1064 (Pa. Cmwlth. 2001). "The central requirement is that 'communications be for the purpose of securing or providing professional legal services.'" *Davis*, 122 A.3d at 1192 (quoting *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 52 n.8 (Pa. 2011)). Additionally, our Supreme Court has explained:

> [T]he determination of the applicability of the attorney-client privilege does not turn on the category of the information, such as a client's identity or address, or the category of a document, such as whether it is an invoice or fee agreement. Instead, the relevant question is whether the content of the writing will result in disclosure of information otherwise protected by the attorney-client privilege. . . . For example, descriptions of legal services that address the client's motive for seeking counsel, legal advice, strategy, or other confidential communications are undeniably protected under the attorney[-]client privilege. In contrast, an entry that generically states that counsel made a telephone call for a specific amount of time to the client is not information protected by the attorney-client privilege but, instead, is subject to disclosure under the specific provisions of the RTKL.

*Levy v. Senate of Pa.*, 65 A.3d 361, 373 (Pa. 2013).

Here, the OOR determined that Items 1, 6, 10, 11, 12, and 15 were protected by privilege and were, therefore, exempt from disclosure. (OOR Final Determination at 11.) Upon its review, the trial court agreed except for Items 11 and 12, which it ordered disclosed. (Trial Court Op. at 9-10.) Per the privilege log, the items that were protected under the privileges are as follows: Item 1 is correspondence and a draft engagement letter from Attorney Cromer to the Solicitor; Item 6 is correspondence and an engagement letter sent to the Township by Attorney Cromer; Item 10 is correspondence and a legal memorandum from Attorney Cromer to the Solicitor; and Item 15 is a draft document from Attorney Cromer to be reviewed by the Township's Board of Supervisors. (O.R. at 263-64.) The trial court reviewed these records and concluded Items 1, 6, 10, and 15 were properly withheld from Requester as being protected by privilege. (Trial Court Op. at 9.)

In accordance with *American Civil Liberties Union of Pennsylvania v. Pennsylvania State Police*, 232 A.3d 654, 670 (Pa. 2020),[10] we conducted an *in camera* review of the requested documents. Upon that review, we discern no error in the trial court's conclusion. Attorney Cromer credibly testified before the trial court that he was retained by the Township and that he met with the Board of Supervisors to discuss potential litigation. Additionally, the records at issue involve communications between the Township, the client, and Attorney Cromer, the attorney, and discuss potential litigation and legal advice. Thus, these communications involved private communication where a client was seeking legal advice from an attorney. Moreover, the documents reflect the "mental impressions,

---

[10] Our Supreme Court held that this Court cannot conduct a review of a fact finder's *in camera* review without conducting an equally careful inquiry.

18

theories, notes, strategies, research and the like created by [the Solicitor] in the course of his . . . professional duties." *Bagwell*, 131 A.3d at 657 (internal quotations and emphasis omitted). As a result, these communications and documents are protected under the attorney-client and work-product privileges. Unless Requester established waiver under the fourth prong of the attorney-client privilege, these documents are protected from disclosure.

Requester argues that the records are not protected by a privilege because the Township has waived the privilege through the crime-fraud exception. The crime-fraud exception to the attorney-client privilege "does not protect communications made for the purpose or in the course of the commission of proposed crime or fraud." *In re Investigating Grand Jury of Phila. Cnty. No. 88-00-3503*, 593 A.2d 402, 407 (Pa. 1991).

> The reason for the nonapplication [of the privilege] has been variously stated: "no court can permit it to be said that the contriving of a fraud can form part of the professional occupation of an attorney or solicitor." . . . "In order that the rule may apply there must be both professional confidence and professional employment, but if the client has a criminal object in view in his communications with his solicitor one of these elements must necessarily be absent. The client must either conspire with his solicitor or deceive him. If his criminal object is avowed, the client does not consult his adviser professionally, because it cannot be the solicitor's business to further any criminal object. If the client does not avow his object he reposes no confidence, for the state of facts, which is the foundation of the supposed confidence, does not exist. The solicitor's advice is obtained by a fraud." . . . "Such communications were not made to the attorney in his professional capacity, as they were such as he could not receive in such capacity, and therefore were not privileged." . . . When the advice of counsel is sought in aid of the commission of [a] crime or fraud, the communications are not "confidential" within the meaning of the statute[,] and may be elicited from the client or the attorney on the witness stand. "There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an

attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told." . . . .

The protection of the statute is lost when both attorney and client are guilty or if the client alone is guilty. But, before the fact may be shown, the court must be satisfied that the evidence proposed to establish the fact is sufficient to go to the jury for the purpose. "To drive the privilege away, there must be 'something to give colour to the charge'; there must be 'prima facie evidence that it has some foundation in fact.' When that evidence is supplied, the seal of secrecy is broken."

*Nadler v. Warner Co.*, 184 A. 3, 5 (Pa. 1936) (internal citations omitted). "Simply stated," it is "insufficient" for a party to say they "believe[] it is so, then it must be so [because] two conclusions conceivably may be drawn from that same evidence— that suggested by the [party claiming the exception], and that argued by the [party asserting the privilege]." *In re Investigating Grand Jury*, 593 A.2d at 407. It is Requester that bears the burden of presenting "prima facie evidence that the communications were made in the course of [a] commission of a proposed crime or fraud." *Id.*

Requester asserts that the Township engaged in unlawful activity as it relates to alleged violations of the Sunshine Act in hiring Attorney Cromer. Requester also argues that she presented substantial evidence of the Township's "bad faith by detailing threats of litigation against [Requester] over the course of a year" and presented testimony related to the crime-fraud exception. (Requester's Br. at 46; Notes of Testimony (N.T.) at 66-77.) Requester further contends that the trial court did not review the video link of a Board of Supervisors meeting and failed to consider violations of the Sunshine Act that Requester presented. Requester argues that the news article titled "Solicitor: Township isn't suing residents who sued it" (Article) contains "factually incorrect statements and misquotes suggesting [Requester's] concern was that [the] Township would take action against her RTKL

20

requests," and that this article is "central to [Requester's] arguments of bad faith and [the c]rime-[f]raud [e]xception." (Requester's Br. at 40-42.) During the hearing before the trial court, Requester testified that the Township acted in bad faith by threatening litigation against her and withholding the responsive records and that BCC was retained specifically to threaten litigation. (N.T. at 66, 69, 71.)

Reviewing Requester's arguments on the crime-fraud exception, the trial court concluded that no evidence was presented to show that the crime-fraud exception to the attorney-client privilege was present so as to waive the privilege. (Trial Court Op. at 11.) Further, our *in camera* review of the correspondence and draft engagement letter and the correspondence and engagement letter reveals that they contain "the client's motive for seeking counsel, legal advice, strategy, or other confidential communications[,]" and are, therefore, protected under the attorney-client privilege. *Levy*, 65 A.3d at 373. That review also leads us to agree with the trial court that "[n]othing in the [c]ourt's *in camera* review of the documents . . . leads the [c]ourt to believe that in any manner the crime[-]fraud exception to the attorney[-]client privilege is present in this case in any manner[.]" (Trial Court Op. at 11.) Accordingly, the trial court did not err in concluding that Items 1, 6, 10, and 15 were protected by a privilege and that Requester has not proven the waiver of the attorney-client privilege under the crime-fraud exception.

C. *Testimony Before the Trial Court & Trial Court's In Camera Review*

1. Parties' Arguments

Requester argues that the trial court erred when it did not permit her to question Ms. Hartzler on the Article, which Requester contends contains misrepresentations and misquotes suggesting that her concern was that the Township would take action in response to her RTKL Requests. (Requester's Br. at 41.)

21

Requester asserts that the Article is central to her claim of bad faith on the part of the Township, and, therefore, the trial court erred in refusing to allow her to question her witness about the Article. Requester also argues that the trial court should not have accepted records for its *in camera* review from the Solicitor, but should have reviewed the records presented to the OOR. Requester explains that she "vehemently objected to th[is] submission" and wants this Court to "request the original *in*[ ]*camera* records directly from the OOR" as it is not possible to guarantee that the trial court and the OOR reviewed the same records. (*Id.* at 48-49.)

The Township responds that, even as a pro se party, Requester still must comply with the basic procedural and evidentiary rules. (Township's Br. at 23 (citing *City of Phila., Water Revenue Bureau v. Frempong*, 744 A.2d 822, 824 (Pa. Cmwlth. 2000); *Jones v. Rudenstein*, 585 A.2d 520, 522 (Pa. Super. 1991)).) The Township also argues that the Article is not relevant to whether the requested documents are protected by the attorney-client privilege or work-product doctrine and that the trial court was within its discretion to preclude Requester from eliciting testimony about the irrelevant Article. (*Id.* at 25-27.) With respect to the trial court's *in camera* review, the Township contends that the trial court exercised de novo review in determining whether the attorney-client privilege or work-product doctrine applied and was required to conduct its own *in camera* review to ascertain the scope of the asserted privileges. (*Id.*) The Township argues that Requester's objection that the documents submitted to the trial court were somehow different than those reviewed by the OOR was not supported by any evidence, and the Solicitor attested that the documents presented to the trial court were the same as those reviewed by the OOR. (*Id.* at 28.) Thus, the Township maintains the trial court did not abuse its discretion in conducting its own *in camera* review.

2. Analysis

Under Pennsylvania Rule of Evidence 401, all evidence must be relevant. Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. Additionally, being a pro se party "is not a license . . . not to comply with relevant rules of procedural and substantive law." *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975). A pro se litigant "is subject to the same rules of procedure as is a counseled defendant." *Commonwealth v. Abu-Jamal*, 555 A.2d 846, 852 (Pa. 1989).

Here, Requester sought to elicit testimony from Ms. Hartzler regarding the Article to show that the Township is attempting to silence residents who challenge it. (*See* R.R. at 65a, 66a-68a.) The issue before the trial court was the Request and whether the Correspondence were exempt from disclosure under the attorney-client privilege and/or the work-product doctrine. The Article about which Requester sought to elicit testimony did not "make a fact [about the application of the asserted privileges] more or less probable than it would be without the [Article]," and the Article was not "of consequence in determining the action," and, therefore, it was not relevant. Pa.R.E. 401. Requester was required to provide evidence and testimony related to whether the attorney-client privilege and/or the work-product doctrine applies to the Correspondence. The testimony about the Article Requester sought to elicit does not accomplish this task and such questions were not relevant to the central issue of whether the documents were protected by a privilege. Accordingly, the trial court acted within its discretion to limit the testimony of Ms. Hartzler to matters relevant to Requester's appeal.

23

With respect to Requester's argument that the trial court erred when it conducted its own *in camera* review of the documents, we cannot agree. In this local agency RTKL matter, the trial court is the ultimate fact finder and is required "to conduct [a] full de novo review of appeals from decisions made by RTKL appeals officers, allowing for the adoption of the appeals officer's factual findings and legal conclusions when appropriate." *Bowling*, 75 A.3d at 474. Further, when reviewing an appeal from the OOR, the trial court "is entitled to the broadest scope of review, a review of the entire record on appeal along with other material, such as a stipulation of the parties, or an *in camera* review of the documents at issue . . . ." *Pa. Dep't of Labor & Indus. v. Darlington*, 234 A.3d 865, 870 n.6 (Pa. Cmwlth. 2020).

Here, Requester appealed the OOR's Final Determination to the trial court, which conducts its review of the matter de novo. De novo review is "full consideration of a case at another time." *City of Clairton v. Zoning Hearing Bd. of City of Clairton*, 246 A.3d 890, 906 (Pa. Cmwlth. 2021) (citation omitted). Stated more plainly, on de novo review, a trial court is able to "determine the case *anew*, including matters pertaining to testimony and other evidence." *Bowling*, 75 A.3d at 466 n.14. Thus, the trial court "has the discretion to rely upon the record created below or to create its own." *Chambersburg Area Sch. Dist. v. Dorsey*, 97 A.3d 1281, 1288 (Pa. Cmwlth. 2014). Accordingly, the trial court was within its discretion to conduct its own *in camera* review as part of its de novo review to determine whether the documents were protected under a privilege.

Requester's only objection to the Township supplying the trial court with the responsive records was her contention that the records could be different from those that the OOR reviewed, which the OOR had not certified to the trial court by the

time of the hearing. (*See* N.T. at 77-78.) However, the Solicitor attested, at the hearing, that the records were the same records submitted to the OOR. (*See id.* at 79-80.) The trial court noted that the Bates numbers in the index provided by the OOR and the documents produced by the Solicitor should match up, but indicated it would make an inquiry with the OOR as to the status of the records produced there, would hold the Solicitor to his representation, and would undertake a line-by-line review of the sealed documents to ascertain if they were covered by a privilege or if the crime-fraud exception applied. (*Id.*) Most importantly, the trial court noted in its Rule 1925(a) opinion that it "reviewed, *in camera*, the electronic unredacted documents submitted by the Certification of Supplemental Records by the [OOR] through the Prothonotary of Lawrence County." (Trial Court 1925(a) Op. at 10.) Indeed, the trial court expressly stated, in response to this argument, that it "received from the [OOR] by way of Supplemental Certification to the Prothonotary dated October 5, 2020, the unredacted documents set forth in Items . . . 2 and 3 of the final determination of [the OOR] via disk, for the Court's review *in camera*." (*Id.* at 12.) Thus, Requester's argument that the trial court erred in conducting its *in camera* review of the documents the Solicitor submitted necessarily fails because the trial court explained that it reviewed the documents certified to it by the OOR.

### D. Bad Faith

#### 1. Parties' Arguments

Requester contends that the trial court erred by failing to find the Township acted in bad faith. Requester asserts that the Township did not establish a good faith effort to search because it "failed to identify a legal statute to deny third-party invoices or adequately describe the process it employed to search for a financial record of the Township, and failed to identify what records were withheld under

25

[the] attorney-client privilege and attorney work-product." (Requester's Br. at 42-43.) Requester further argues that the Township failed to notify BCC of the Request in its search of the responsive records. Requester also asserts that the Township acted in bad faith by not providing the requested records in contravention of the OOR's Final Determination and by threatening litigation against her. (*Id.* at 43-46 (citing Section 1101(b)(1)(3) of the RTKL, 65 P.S. § 67.1101(b)(1)(3)).) Requester argues that the Township continues to act in bad faith by withholding records, and, therefore, the trial court erred in failing to find that the Township acted in bad faith. (*Id.* at 48.)

The Township responds explaining that courts of this Commonwealth have only found bad faith in a handful of cases, none of which are analogous to the instant matter. (Township's Br. at 29.) Citing *Dorsey*, 97 A.3d at 1291-92, and *Uniontown Newspapers*, 185 A.3d at 1171, the Township argues that bad faith has been found based on "an agency's failure to review responsive records," or where there is evidence supporting a finding that an agency failed to perform its mandatory duties, "including a failure to search its records prior to a denial of access." (*Id.* (internal quotations omitted).) Contrasting the cases where bad faith was found with this matter, the Township contends that the record here shows that it conducted a good faith search of its records, which includes both electronic and paper records. (*Id.* at 30.) The Township maintains that Requester presented no evidence showing that Township acted in bad faith and "the record reflects the Township performed a good faith search for the records promptly after receiving [Requester's] request." (*Id.*) Additionally, the Township argues that neither the OOR nor the trial court made a specific finding of bad faith on the part of the Township, leaving Requester's bad faith argument unsupported by the findings. (*Id.* at 31.)

26

2. Analysis

To comply with Section 901 of the RTKL, the Township was required to make a good faith search to determine whether it had possession, custody, or control of the responsive records. 65 P.S. § 67.901. Bad faith under the RTKL "does not require a showing of fraud or corruption. The lack of good faith compliance with the RTKL and an abnegation of mandatory duties under its provisions" is enough to rise to the level of bad faith. *Uniontown Newspapers*, 185 A.3d at 1170. Additionally, an agency's failure to perform a good faith search in response to a RTKL request may be grounds for bad faith. *Dorsey*, 97 A.3d at 1292. It is a requester's burden to show that an agency committed bad faith and must produce evidence of bad faith. *Uniontown Newspapers*, 185 A.3d at 1170-71 (citing *Barkeyville Borough v. Stearns*, 35 A.3d 91 (Pa. Cmwlth. 2012)).

In *Dorsey*, a school district did not provide the requester with all the responsive records until two years later, when it provided the requester over 3,000 pages of responsive records which were discovered by the district's interim open record officer while conducting discovery in an unrelated case. 97 A.3d at 1286. Although the school district argued it did not intentionally withhold the records, this Court concluded that the agency acted in bad faith by not disclosing the records until years later. *Id.* at 1292. We explained "[t]here is no indication why, with diligence, the [d]istrict would not have been able to produce those documents in response to the RTKL requests the way [it was] able to in compliance with the discovery requests." *Id.* Thus, the lack of diligence on the part of the agency in reviewing responsive records could be grounds for a finder of fact to discern bad faith.

This Court similarly concluded that an agency acted in bad faith for not disclosing records in *Uniontown Newspapers*. There, the Department of Corrections

27

"did not conduct a thorough search for responsive records until after the appeals process concluded." *Uniontown Newspapers*, 185 A.3d at 1175 (emphasis omitted). The Court further found that the Department of Corrections made "piecemeal, incomplete disclosures" over a three-year period, and had not complied with the OOR's order to disclose the records at issue *Id.* at 1173, 1175. As a result, the Court concluded that the agency acted in bad faith.

The facts in the case *sub judice* are distinguishable from those in *Dorsey* and *Uniontown Newspapers*. Here, the Township complied with Requester's Request and conducted a search for all records requested. The Township provided attestations of both its RTKO and Solicitor regarding numerous responsive records and why those records were not being provided. (R.R. at 21a-24a, 45a-47a.) These attestations explain, in detail, the search that was conducted for the records, the files searched in order to locate any responsive records, and why, if records were found, they were privileged. In contrast, Requester has provided no evidence to support her allegations that the Township acted in bad faith to support her bare, conclusory allegations that the Township somehow acted in bad faith. Requester had the opportunity to introduce evidence at the hearing before the trial court showing that the Township acted in bad faith, which she did not do. Absent evidence that the Township acted in bad faith, the Court can discern no bad faith on the part of the Township. Accordingly, the trial court did not err when it failed to find that the Township acted in bad faith when responding to the Request.

E. *The Township's Failure to Provide Responsive Records*

1. Parties' Arguments

Finally, Requester asserts that the trial court erred by not providing a timeline for the Township to produce the responsive records. Requester argues that the

Township failed to release the records in contravention of the OOR's Final Determination and, because the Township did not appeal that determination, it waived its right to withhold the records. (Requester's Br. at 50.) Requester also argues that the automatic stay of the release of responsive records under Section 1301(b) of the RTKL, 65 P.S. § 67.1301(b), does not apply because the Township did not appeal the OOR's Final Determination or the trial court's decision. (*Id.* at 51.) As a result, Requester asserts she should not be required to file a separate enforcement action, which would only delay her receipt of the records and contradict the purpose of the RTKL. (*Id.* at 52.)

The Township rejoins that the appeal to the trial court of the OOR's Final Determination stays the release of the responsive records pending disposition of the appeal. (Township's Br. at 31 (citing Section 1302(b) of the RTKL, 65 P.S. § 67.1302(b)).) The Township argues that, regardless of which party files the appeal, Section 1302(b) operates a stay of the release of records. (*Id.* at 32.) The Township additionally argues that the appeal to this Court also operates as a supersedeas pursuant to Section 5105(e) of the Judicial Code, 42 Pa.C.S. § 5105(e). (*Id.*) Replying to Requester's reliance on this Court's decision in *Baron v. Department of Human Services*, 169 A.3d 1268 (Pa. Cmwlth. 2017), the Township argues that this reliance is misplaced because, in *Baron*, this Court reached the opposite conclusion than what Requester argues, holding that a stay applies to all records regardless of what the basis for the exemption is. (*Id.*) The Township asserts that the Court in *Baron* was clear when it explained "'any attempt to enforce an **appealed** final determination before disposition of the merits is premature.'" (*Id.* at 33 (citing *Baron*, 169 A.3d at 1275 (emphasis in original)).) The Township further argues that Requester has not filed an enforcement or mandamus petition and,

therefore, she is requesting that this Court enforce the OOR's Final Determination without even having filed a petition to enforce, which would be premature anyway. (*Id.*) The Township also contends that to permit disclosure of the records while an appeal is ongoing would waive the Township's claim of privilege. (*Id.* at 34 (citing *Joe v. Prison Health Servs.*, 782 A.2d 24, 31 (Pa. Cmwlth. 2001)).) Thus, the Township argues that the trial court did not abuse its discretion in failing to order the Township to provide the responsive records.

### 2. Analysis

Pursuant to Section 1302(b) of the RTKL, an appeal to this Court of a decision of a final determination of the OOR stays the release of the documents until the trial court issues its decision. 65 P.S. § 67.1302(b). Additionally, this Court has explained that "the threat of disclosing a non-public record warrants an automatic stay." *Baron*, 169 A.3d at 1276. The Court further explained that "the stay applies to all records at issue regardless of the basis for the exemption, who asserted it, or who preserved it. The alternative encourages piecemeal litigation, whereby parts of a final determination are enforced and others are disputed, creating confusion for the parties and the courts." *Id.* Furthermore, "any attempt to enforce an **appealed** final determination before disposition of the merits is premature." *Id.* at 1275 (emphasis in original). Accordingly, Requester's argument that an automatic stay was not triggered due to the Township not appealing the OOR's Final Determination is unavailing. It would be contrary to RTKL jurisprudence to allow disclosure of records prior to the disposition of the merits, particularly where the disclosure of documents that are allegedly protected by a privilege to a third party would result in the waiver of the privilege. *See Joe*, 782 A.2d at 31 (explaining that "once the

30

attorney-client communications have been disclosed to a third party, the privilege is deemed waived").

Because Requester filed a timely appeal of the OOR's Final Determination to the trial court and then filed an appeal of the trial court's decision to this Court, the release of the responsive records are stayed pending resolution of the appeal. To require disclosure would make the Township waive its claim of privilege and cause "confusion for the parties and the courts" where parts of a Final Determination are enforced and others disputed. *Baron*, 169 A.3d at 1276. Accordingly, the trial court did not err when it failed to order the Township to disclose the responsive records.

## III.    CONCLUSION

Based on the foregoing reasons, we conclude that the trial court did not err or abuse its discretion, and we, therefore, affirm. The Township is required to release the responsive records that are not exempt from disclosure within 30 days.

_____
**RENÉE COHN JUBELIRER,** President Judge

31

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carrie Hahn,                          :
                Appellant          :
                              :
         v.                          :  No.  593 C.D. 2021
                              :
Wilmington Township                   :

## O R D E R

**NOW**, January 3, 2023, the Order of the Court of Common Pleas of Lawrence County is **AFFIRMED**. Wilmington Township shall provide Carrie Hahn the responsive records that are not exempt from disclosure within thirty (30) days.

_____
**RENÉE COHN JUBELIRER,** President Judge