IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia Law Department   :
   :
          v.         :   No. 281 C.D. 2024
   :   Argued: March 4, 2025
Dan Auerbach,          :
          Appellant   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE STACY WALLACE, Judge (P.)
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER      FILED: March 31, 2025

Dan Auerbach (Requester) appeals from the March 5, 2024 Order of the Philadelphia County Court of Common Pleas (trial court) denying his "Miscellaneous Motion for Bad Faith and Attorneys Fees" (Fee Motion) and denying his Bill of Costs. For the reasons that follow, we affirm the trial court's Order.

## I. **Background**

On January 13, 2023, Requester submitted a request pursuant to the Right-to-Know Law (RTKL), Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104, seeking certain records maintained by the City of Philadelphia (City).[1] Specifically, Requester sought

> [a]ny email[s] sent by, or received by, [City] Health Commissioner Cheryl Bettigole from 12/1/2022 to [the] present that either: (1) contain the phrase "Jah"; or (2) . . . relate in any way to a panel interview of

---

[1] We use "City" herein to refer to both the City of Philadelphia and the City of Philadelphia Law Department, the appellee in this matter.

Commissioner Bettigole and Dr. Ashish Jha conducted on or about December 15, 2022 by The Philadelphia Inquirer.

(Original Record (O.R.) at 38.)[2]

On February 22, 2023, the City granted Requester's request in part and denied it in part. The City denied item 2 of the request as insufficiently specific. *See* Section 703 of the RTKL, 65 P.S. § 67.703 ("A written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested and shall include the name and address to which the agency should address its response."). With regard to item 1 of the request, the City withheld certain records under the internal predecisional deliberations and personal notes and working papers exemptions of the RTKL. *See* Section 708(10)(i)(A) and (12) of the RTKL, 65 P.S. § 67.708(10)(i)(A) and (12).[3] The City also denied certain

---

[2] At that time, Dr. Ashish Jha was the White House COVID-19 response coordinator. Although the search term specified in item 1 of Requester's request was "Jah," the correct spelling of the doctor's name is "Jha." (*See* O.R. at 11.)

[3] Section 708(b)(10)(i)(A) and (12) of the RTKL provides that the following records are exempt from disclosure:

(10)(i) A record that reflects[] . . .

(A) The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

. . . .

(12) Notes and working papers prepared by or for a public official or agency employee used solely for that official's or employee's own personal use, including telephone message slips, routing slips and other materials that do not have an official purpose.

**(Footnote continued on next page…)**

records as confidential medical records under Section 15(a) of the Disease Prevention and Control Law of 1955 (DPCL), Act of April 23, 1956, P.L. (1955) 1510, *as amended*, 35 P.S. § 521.15(a).[4]  The City ultimately produced 50 pages of responsive records to Requester, but it redacted from those records personal identification information as exempt under Section 708(b)(6)(i) of the RTKL, 65 P.S. § 67.708(b)(6)(i).[5]

Requester appealed to the Office of Open Records (OOR), challenging the City's claimed exemptions.  The OOR invited both parties to supplement the record.  In support of its exemptions, the City submitted the Affidavit of Tracy Jones,

---

65 P.S. § 67.708(b)(10)(i)(A) and (12).

[4] Section 15(a) of the DPCL provides:

> State and local health authorities may not disclose reports of diseases, any records maintained as a result of any action taken in consequence of such reports, or any other records maintained pursuant to this act or any regulations, to any person who is not a member of the [Pennsylvania Department of Health] or of a local board or department of health, except as follows:
>
> (1) Where necessary to carry out the purposes of this act.
>
> (2) Where necessary to inform the public of the risk of a communicable disease.

35 P.S. § 521.15(a).

[5] Section 708(b)(6)(i) of the RTKL exempts the following information from disclosure:

> (A) A record containing all or part of a person's Social Security number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number.
>
> (B) A spouse's name, marital status or beneficiary or dependent information.
>
> (C) The home address of a law enforcement officer or judge.

65 P.S. § 67.708(b)(6)(i).

Executive Assistant and Open Records Officer for the City's Department of Public Health.[6]  Both the City and Requester also submitted written position statements to the OOR.

---

[6] Jones attested in relevant part:

> 3.  Regarding part 2 of the request, it is unclear what [R]equester meant by "relate in any way[]" to the panel interview of Commissioner Bettigole and Dr. Ashish Jha, conducted on or about December 15, 2022, by The Philadelphia Inquirer.  The phrase "relate in any way" is unclear and would require the City to guess what may or may not "relate in any way" to the panel interview.  Would any interview given by Commissioner Bettigole to a different outlet relate in some way to the specified subject matter, since interviews "relate" to interviews?  Would discussions about Dr. Jha, unrelated to the interview, relate in some way to the requested subject matter, since Dr. Jha "relates" to himself?  Would any email that is about the same subject as an interview question, but otherwise unrelated to the interview, be "related" in some way to the interview because that email could have informed an answer to the interview question?  It is unclear how such a search could be performed, and the review would require that we guess what is in [R]equester's head as far as what may "relate in any way."

> 4.  Given the limitless number of topics or keywords potentially implicated in part 2 of the request and what [R]equester may or may not deem to "relate in any way" to the panel interview, the City reasonably interpreted this request as seeking emails that contained Dr. Jha's last name.

> 5.  I, therefore, caused Commissioner Bettigole's email account to be searched for the time period of 12/1/2022 through 1/13/2023 (the date the request was received) that included the term "Jah" as well as the correct spelling of Dr. Ashish Jha's name, "Jha." This search included any email sent or received by Health Commissioner Cheryl Bettigole.

> 6.  This was the best way to perform a reasonable, yet inclusive, search of email messages sent or received by Health Commissioner Cheryl Bettigole for the requested time period that were related to the interview panel with Dr. Ashish Jha on or about December 15, 2022, conducted by The Philadelphia Inquirer, and it was the best way to search for the records regarding part 1 of the request.

> 7. . . . All documents from the search were reviewed, and all public . . . documents were produced to [R]equester. . . .

**(Footnote continued on next page…)**

On April 14, 2023, the OOR granted Requester's appeal in part and denied it in part. The OOR agreed with the City that item 2 of the request was insufficiently specific. The OOR also upheld the City's redaction of personal identification information from the disclosed records. However, the OOR concluded that the City did not demonstrate that it properly withheld responsive records under the internal predecisional deliberations exemption of the RTKL or as confidential medical records under the DPCL. Therefore, the OOR ordered the City to disclose additional responsive records consistent with its decision within 30 days.

The City appealed to the trial court. In support of its appeal, the City submitted the following additional evidence: the Affidavit of Sara Enes Thorpe (Thorpe Affidavit), Chief of Staff of the City's Department of Public Health,[7] and an Exemption Log listing its claimed exemptions to the withheld records.

---

(Jones Affidavit ¶¶ 3-7.)

[7] Thorpe attested in relevant part:

7. The internal predecisional deliberation email communications are for the purpose of discussing, reaching, and making policy decisions to combat the spread of COVID-19. More detail is provided, on a document-by-document basis, in the exemption log.

. . . .

10. The records coded "Disease Control and Prevention Law" in the attached exemption log discuss or include reports of COVID-19, including, "reports of diseases, any records maintained as a result of any action taken in consequence of such reports, or any other records maintained pursuant to this act." 35 P.S. § 521.15. More detail is provided, on a document-by-document basis, in the provided exemption log.

. . . .

13. I have reviewed all withheld communications between [the City Department of Public Health] employees mentioned in paragraph 1 above as well as employees

**(Footnote continued on next page…)**

5

Following briefing and oral argument by the parties, the trial court entered an Order on January 4, 2024,[8] granting the City's appeal in part and denying it in part. Specifically, the trial court reversed the portion of the OOR's decision requiring the City "to disclose the records reflective of personal calendars of [City] employees[] . . . because those work-related appointment or calendar records are exempt from disclosure pursuant to [Section 708(b)(12) of] the [RTKL], [65 P.S. § 67.]708(b)(12)." (Trial Ct. Order & Memo. Op., 1/4/24, at 1-2.) The trial court affirmed the remainder of the OOR's decision.

In its supporting Memorandum Opinion, the trial court agreed with the OOR that the City's evidence was "conclusory and insufficient" to support the claimed exemptions. (*Id.* at 10.) The trial court also found that the City's newly submitted Thorpe Affidavit and Exemption Log contained "self-serving, conclusory language," which "did not cure the dearth of evidence to support [the City's] exemption claims[s]" under the RTKL or the DPCL. (*Id.*)[9] The trial court explained:

> of the federal government, including Kevin Munoz and Cameron Webb. To the best of my knowledge, Cameron Webb was at all times relevant hereto a Senior Advisor to the White House COVID-19 Response Team and Kevin Munoz was at all times relevant hereto a White House Assistant Press Secretary.
>
> 14. The [City Department of Public Health] employees mentioned in paragraph 1 above communicated with Kevin Munoz and Cameron Webb for the purpose of combating the spread of COVID-19 and containing the impact of COVID-19. More detail is provided, on a document-by-document basis, in the provided exemption log.

(Thorpe Affidavit ¶¶ 7, 10, 13, 14.)

[8] The trial court's Order is dated January 3, 2024, but it was not entered on the docket until January 4, 2024. (O.R. at 3; Reproduced Record (R.R.) at 44a.)

[9] "Relevant and credible testimonial affidavits may provide sufficient evidence in support of a claimed exemption; however, conclusory affidavits, standing alone, will not satisfy the burden of proof an agency must sustain to show that a requester may be denied access to records under the RTKL." *Office of Dist. Atty. v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017).

6

For example, the following vague verbiage "[i]nternal communications deliberating how to best handle a request to the White House concerning COVID-19 [c]ommunication strategy" was repeatedly recited and slightly reworded under the Exemption Log's [r]ecord [d]escription. This ambiguous language did not facilitate any aid to inquiry. Frankly, [an] *in camera* review of the referenced emails could possibly have assisted th[e trial c]ourt's evaluation.

(*Id.* at 11.) The trial court ultimately concluded:

After contextually considering the entire record that has been supplemented with [the Thorpe Affidavit] and [the Exemption L]og, this trial court determined that the City had failed to meet [its] burden of demonstrating that [Section 708(b)(10)(i)(A) of the] RTKL, 65 P.S. § 67.708(b)(10)(i)(A)[,] or [Section 15 of the] DPCL, 35 P.S. § 521.15[,] had provided for the exemption of public disclosure of those requested records.

(*Id.* at 5.)

Following the trial court's decision, the City produced 47 additional emails responsive to the RTKL request (disputed emails) to Requester on February 2, 2024.

Two days later, on February 4, 2024, Requester filed the instant Fee Motion with the trial court, alleging that the City had acted in bad faith in originally withholding the disputed emails and seeking counsel fees and the imposition of a civil penalty under Sections 1304 and 1305 of the RTKL, 65 P.S. §§ 67.1304 and 67.1305.[10] In his Fee Motion, Requester averred that the City "lied" and submitted

_____

[10] Section 1304 of the RTKL provides:

**(a) Reversal of agency determination.--**If a court reverses the final determination of the appeals officer or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:

**(Footnote continued on next page…)**

7

"false evidence" to the trial court when it claimed the disputed emails were exempt from disclosure as internal predecisional deliberations or as confidential medical records, asserting that, based on his review of the emails, "[n]one of the 47 records" contained such material. (R.R. at 48a-49a, 52a.) Requester further asserted:

> [T]he RTKL imposes a duty of good faith on the City in responding to these requests. **The City violated that duty by asserting exemptions that were unsupported by any reasonable interpretation of the law and in submitting false evidence to th[e trial c]ourt in support of those improper exemptions.** This type of behavior must be severely punished[] . . . .

(*Id.* at 49a (emphasis added).) Therefore, Requester asked the trial court to "find[ that] the City acted in bad faith and [to] impose attorneys' fees and an appropriate

---

> (1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of this act; or
>
> (2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.
>
> **(b) Sanctions for frivolous requests or appeals.--**The court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to an agency or the requester if the court finds that the legal challenge under this chapter was frivolous.
>
> **(c) Other sanctions.--**Nothing in this act shall prohibit a court from imposing penalties and costs in accordance with applicable rules of court.

65 P.S. § 67.1304. Section 1305 of the RTKL provides:

> **(a) Denial of access.--**A court may impose a civil penalty of not more than $1,500 if an agency denied access to a public record in bad faith.
>
> **(b) Failure to comply with court order.--**An agency or public official who does not promptly comply with a court order under this act is subject to a civil penalty of not more than $500 per day until the public records are provided.

65 P.S. § 67.1305.

8

punitive civil penalty to ensure that the City thinks twice before pursuing a similar course of action in the future." (*Id.*)

On February 12, 2024, Requester filed a Bill of Costs with the trial court pursuant to Philadelphia Civil Rule 227.5(A),[11] seeking to recover a total of $247.22 in costs, broken down as follows: "Filing Fee for Entry of Appearance $174.54" and "Motion for Bad Faith & Attorneys Fees $72.68." (*Id.* at 71a.)

On February 26, 2024, the City filed a response to the Fee Motion, asserting that Requester, who is an attorney, and his counsel violated the Code of Civility for attorneys and, thus, "the inflammatory statements, mischaracterizations, and *ad hominem* attacks contained in [the Fee M]otion must not be given any weight or consideration." (R.R. at 73a-74a (citing 204 Pa. Code § 99.3 (setting forth a lawyer's duties to the court and to other lawyers)).) The City pointed out that neither the OOR nor the trial court found "that the City failed to comply with its good faith obligation to search for the records requested and promptly respond to [Requester's] RTKL request under Section 901 of the RTKL[,]" 65 P.S. § 67.901.[12] (*Id.* at 76a.) The City further asserted:

---

[11] Philadelphia Civil Rule 227.5(A) provides in relevant part: "A bill of costs may be filed with the Office of Judicial Records no later than ten (10) days after final judgment. A judgment becomes final when the applicable appeal period has expired without appeal." Phila.Civ.R. *227.5(A).

[12] Section 901of the RTKL provides in relevant part:

> Upon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record, legislative record or financial record and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the circumstances existing at the time of the request.

65 P.S. § 67.901.

As th[e trial c]ourt made no finding regarding bad faith in [its] January 3, 2024 final order, which disposed of th[e City's] appeal, [the Fee M]otion may be treated as an untimely and impermissible motion for reconsideration. *See* [Section 5505 of the Judicial Code,] 42 Pa.C.S. § 5505.[13] More than thirty days elapsed after the entry of th[e trial c]ourt's January 3, 2024 order before the instant [Fee M]otion was filed. Therefore, th[e Fee M]otion is untimely and should be denied with prejudice.

(*Id.* at 74a n.1.)

On March 5, 2024, the trial court entered an Order denying the Fee Motion and denying the Bill of Costs. In its subsequent Pennsylvania Rule of Appellate Procedure 1925(a) Opinion, the trial court concluded that under Section 5505 of the Judicial Code, it can only act on a motion for counsel fees filed within 30 days of a final order; however, Requester filed his Fee Motion "[2] days after the 30-day appeal window had closed," thereby divesting the trial court of jurisdiction to consider it. (Trial Ct. Op., 7/15/24, at 4-5.) Alternatively, the trial court concluded that even if the Fee Motion had been timely filed, the record did not establish that the City acted in bad faith in responding to the RTKL request. (*Id.* at 8.) The trial court explained its reasoning as follows:

> **[T]he [c]ertified [r]ecord soundly reflects that the City's designated officials had conducted a thorough and detailed public records search for the requested records.** As to the records that had been withheld, the City provided cogent supportive legal arguments for withholding them. **The City promptly produced responsive records in compliance with th[e trial c]ourt's order, which further demonstrated a good faith effort to fulfill the RTKL request.**
>
> The City's original partial denial of the request by the OOR was supported before th[e trial c]ourt by detailed [A]ffidavits and an

---

[13] Section 5505 of the Judicial Code states: "Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S. § 5505.

[E]xemption [L]og, which had soundly articulated the legal and factual bases for the exemptions claimed. The OOR and th[e trial c]ourt reviewed these submissions and had agreed in part with the City's interpretations. **While certain claimed exemptions were found to be incorrectly asserted, the City's interpretation of those exemptions w[as] understandable in light of existing ambiguities and the lack of clearly defined terms within the RTKL. There was nothing in this record that would remotely suggest that the City had acted in bad faith** . . . .

(*Id.* (emphasis added).) Finally, the trial court denied Requester's Bill of Costs, noting that costs may only be awarded to a "prevailing party" and this matter involved "mixed results," with each party prevailing on different legal issues. (*Id.*)

Requester now appeals from that decision.[14]

## II. Issues

Before this Court, Requester asserts that the trial court erred in concluding that his Fee Motion was untimely under Section 5505 of the Judicial Code because the Fee Motion sought neither reconsideration nor modification of the trial court's final order. In the alternative, Requester asserts that the trial court erred in denying his Fee Motion on the merits because the record establishes that the City withheld the disputed emails in bad faith before being ordered to produce them. Finally, Requester asserts that the trial court erred in denying his Bill of Costs, where he was the prevailing party and where the City did not file exceptions to the Bill of Costs.

---

[14] We have outlined our Court's scope and standard of review in an appeal from a trial court order on counsel fees as follows:

Generally, an award of counsel fees will not be disturbed absent of an abuse of discretion, if the trial court's findings of fact are supported by the record. Whether the trial court had jurisdiction to act on [a motion for counsel fees], however, is a question of law as to which [our] standard of review is *de novo* and [our] scope of review is plenary.

*Ness v. York Twp. Bd. of Comm'rs*, 123 A.3d 1166, 1169 n.1 (Pa. Cmwlth. 2015) (internal citations omitted).

11

### III. <u>Analysis</u>

### A. Timeliness

First, Requester asserts that the trial court erred in denying his Fee Motion as untimely. He contends that the trial court erroneously applied Section 5505 of the Judicial Code because his Fee Motion did not seek to modify the trial court's final order, nor did it seek reconsideration. (Requester's Br. at 25-27.) Requester maintains that the RTKL does not provide a time limit for requesting counsel fees and that the trial court has "enduring jurisdiction" to consider a fee request under the RTKL. (*Id.* at 27.) We need not reach these issues, however, because we conclude that Requester filed his Fee Motion within 30 days of the trial court's final order under our rules of procedure and statutory construction, and, therefore, it was not untimely filed.

Pennsylvania Rule of Appellate Procedure 108(b) provides: "The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be **the date on which the clerk makes the notation in the docket that written notice of entry of the order has been given as required by [Pennsylvania Rule of Civil Procedure] 236(b)**."[15] Pa.R.A.P. 108(b) (emphasis added); *see also*

---

[15] Pennsylvania Rule of Civil Procedure 236 states in pertinent part:

(a) The prothonotary shall immediately give written notice of the entry of

 . . . .

    (2) any other order or judgment to each party's attorney of record or, if unrepresented, to each party. The notice shall include a copy of the order or judgment.

(b) The prothonotary shall note in the docket the giving of the notice and, when a judgment by confession is entered, the mailing of the required notice and documents.

Pa.R.Civ.P. 236(a)(2) and (b).

*Gomory v. Dep't of Transp., Bureau of Motor Vehicles*, 704 A.2d 202, 204 (Pa. Cmwlth. 1998) (stating that "a trial court's order is not 'entered' until that order has been **entered by the Prothonotary on the docket and notice of the order's entry has been given to the parties by the Prothonotary** as required by" Pa.R.Civ.P. 236) (emphasis added).

Here, although the trial court's final order is **dated** January 3, 2024, the trial court docket entries establish that the order was not **entered** on the docket until **January 4, 2024**, and the Prothonotary provided the requisite Rule 236 notice to the parties on **January 4, 2024**. (O.R. at 3; R.R. at 44a.)[16] Thirty days from that date is February 3, 2024, which was a Saturday. Under Section 1908 of the Statutory Construction Act of 1972, "**[w]henever the last day of any [statutory time] period shall fall on Saturday or Sunday**, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, **such day shall be omitted from the computation**." 1 Pa.C.S. § 1908 (emphasis added). Thus, because the thirtieth day was a Saturday, that day would be omitted from the calculation, as would Sunday, so the filing would be due no later than Monday, February 5, 2024.

The record shows that Requester filed his Fee Motion electronically on Sunday, February 4, 2024, and the Fee Motion was docketed on Monday, February 5, 2024.[17] (O.R. at 3; R.R. at 44a.) Therefore, because Requester's Fee Motion was, in fact, filed within 30 days of the January 4, 2024 Order, the trial court erred in

---

[16] Although the trial court acknowledged this docketing date in its Opinion, (Trial Ct. Op., 7/15/24, at 4 n.7), it apparently calculated the 30-day period beginning with the date written on the order, January 3, 2024.

[17] *See* Phila.Civ.R. *205.4(c)(2)(i) (stating that "[a]ll legal papers shall be filed electronically"); Phila.Civ.R. *205.4(f)(4), Note (stating that "access to the Electronic Filing System shall be available at all times," but "legal papers can only be reviewed during normal court hours").

13

concluding that the Fee Motion was untimely under Section 5505 of the Judicial Code.[18]

## B. Fee Motion

Next, Requester asserts that the trial court erred in denying his Fee Motion on the merits because the City wrongfully claimed that the disputed emails were exempt from disclosure in bad faith. Specifically, Requester contends that the record shows that the City willfully and wantonly withheld the disputed emails based on "lie[s]," "false affidavit[s]," and a "false exemption log." (Requester's Br. at 2, 21, 26, 32-33.) Therefore, Requester asserts that the trial court should have awarded him counsel fees under Section 1304(a) of the RTKL and imposed a civil penalty on the City under Section 1305(a) of the RTKL. We disagree.

## 1. <u>Counsel Fees</u>

Requester first seeks counsel fees under Section 1304(a) of the RTKL, 65 P.S. § 67.1304(a). Section 1304(a) allows a court to award counsel fees if the court reverses an OOR final determination or grants access to records "when either: (1) an agency acted with willful or wanton disregard of the right to access in bad faith; or[] (2) the agency's denial was not based on a reasonable interpretation of law." *Pa. Dep't of Educ. v. Bagwell*, 131 A.3d 638, 660-61 (Pa. Cmwlth. 2015). The purpose of an award of counsel fees under the RTKL is to "remedy the damage to the requester where an agency has denied access to records in bad faith." *Office of Dist. Atty.*, 155 A.3d at 1140.

Our Court has explained that "'bad faith' does not require a showing of fraud or corruption" but merely a "lack of good faith compliance with the RTKL and an

---

[18] In light of this conclusion, we need not address the broader legal issue of whether the 30-day time limit in Section 5505 of the Judicial Code applies to a motion for counsel fees under the RTKL.

14

abnegation of mandatory duties under its provisions." *Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, 185 A.3d 1161, 1170 (Pa. Cmwlth. 2018) (Simpson, J.) (single-judge opinion), *aff'd*, 243 A.3d 19 (Pa. 2020). The focus of a bad faith inquiry "is not on the mental state of the actor but [on] the actions taken by the agency." *Office of Dist. Atty.*, 155 A.3d at 1141. To award counsel fees under "Section 1304 of the RTKL, the trial court must find a willful and wanton disregard of access on the agency's part, an unreasonable interpretation of the law, or a frivolous appeal." *Barkeyville Borough v. Stearns*, 35 A.3d 91, 98 (Pa. Cmwlth. 2012). The requester bears the burden of proving that an agency acted in bad faith and must produce evidence of bad faith. *Uniontown*, 185 A.3d at 1170-71; *see Pa. Dep't of Educ.*, 131 A.3d at 661 (stating that "'evidence of bad faith' . . . is necessary to impose [counsel] fees" under Section 1304(a) of the RTKL) (citation omitted).

In his Fee Motion, Requester repeatedly alleged that the City lied and falsified evidence before both the OOR and the trial court. For example, he averred that the City "conducted a review of documents, determined what—for whatever reason—the City wished to hide from the public, and asserted a number of exemptions that sounded good with the expectation [that] it would get away with it." (R.R. at 57a.) He also averred that the Thorpe Affidavit is "false," that "the City routinely submits false affidavits to the [OOR]" and "routinely fails to act in good faith under the RTKL," and that "[t]he City lied" to the trial court when it submitted a falsified Exemption Log. (*Id.* at 48a, 55a, 58a-59a; *see id.* at 49a ("Every entry on th[e City's] [E]xemption [L]og was false.").)

As evidence of the City's bad faith, Requester points to "three specimen emails" that he claims demonstrate the City's intent to deceive the OOR and the trial court. (Requester's Br. at 33-35.) In the first email, Commissioner Bettigole

15

requested that the White House use her professional head shot for an upcoming promotional event. (R.R. at 62a.) The second email from Commissioner Bettigole was comprised only of the exclamation "Nice!" (*Id.* at 65a.) In the third email, Commissioner Bettigole was copied on a message to a White House representative, which stated:

> I'm working with Dr. Bettigole to try to secure either Dr. [Anthony] Fauci or Dr. Jha to join her via Zoom for a live-streamed event sponsored by [T]he Philadelphia Inquirer. As you can well imagine, the Inquirer is very pleased, as are we, at the prospect of one of them participating. We are happy to work around their schedules, so please let me know if there are any updates.

(*Id.* at 67a.) However, when these emails are viewed in conjunction with the other 44 emails that were produced, (*see* O.R. at 291-419), it is evident that all of the emails related to the City's internal preparations for an upcoming media event with high-profile medical experts to address public misinformation regarding the COVID-19 pandemic and COVID-19 vaccines. We cannot conclude that these three emails, isolated from their original context, independently prove the City's intent to willfully withhold responsive records in bad faith.

We agree with the trial court that Requester did not establish that the City withheld the disputed emails in bad faith. The record shows that the City conducted a thorough, detailed search for the requested records, initially producing 50 pages of responsive, non-privileged, non-exempt records to Requester, with certain redactions that were later determined to be appropriate. (*See* O.R. at 116, 130-31; Jones Affidavit ¶¶ 3-7); *see also McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 382-83 (Pa. Cmwlth. 2014) (generally, where "no evidence has been presented to show that [an agency] acted in bad faith, the averments in [the agency's] affidavits should be accepted as true"). In its written response to the request, the City provided

16

a detailed explanation of why it believed the withheld records were exempt from disclosure, offering cogent legal arguments and discussions of relevant legal precedent in support of the claimed exemptions. (*See* O.R. at 40-41, 117-18, 130-31.) After the trial court issued its final order, rather than pursue a further appeal, the City timely produced additional responsive records to Requester, further demonstrating its good faith effort to comply with the RTKL. *See* 65 P.S. § 67.901; *Uniontown*, 185 A.3d at 1170 (explaining that "'bad faith' does not require a showing of fraud or corruption" but merely a "lack of good faith compliance with the RTKL and an abnegation of mandatory duties under its provisions").[19]

Moreover, although the trial court found the City's proffered evidence insufficient to prove that the claimed exemptions applied, the trial court concluded that the City had reasonably asserted the exemptions "in light of existing ambiguities and the lack of clearly defined terms within the RTKL." (Trial Ct. Op., 7/15/24, at 8.) The trial court concluded, based on its review of the complete record, that "[t]here was **nothing in th[e] record that would remotely suggest that the City had acted in bad faith**." (*Id.* (emphasis added).)

We agree with the trial court that the totality of the circumstances and the evidence in this case do not warrant a finding of bad faith. Absent any record evidence that the City acted in bad faith, aside from Requester's bare assertions of

---

[19] In his appellate brief, Requester expressly acknowledges that "our courts—including this [Court]—largely refuse to award fees except in the most egregious cases." (Requester's Br. at 22.) Similarly, in his Fee Motion, Requester asserted that "[w]hile [he] summarizes the state of the law, he does not subscribe to it, and believes it should be reversed or otherwise modified," "particularly . . . where—as here—the City . . . submits affidavits of questionable veracity and otherwise routinely fails to act in good faith under the RTKL . . . ." (R.R. at 55a.)

17

lies and falsehoods, we conclude that the trial court properly denied Requester's request for counsel fees under Section 1304(a) of the RTKL.[20]

## 2. **Civil Penalty**

Next, Requester seeks the imposition of a civil penalty on the City under Section 1305(a) of the RTKL. Section 1305(a) of the RTKL provides that "[a] court may impose a civil penalty of not more than $1,500 **if an agency denied access to a public record in bad faith**." 65 P.S. § 67.1305(a) (emphasis added). Unlike counsel fees under Section 1304, which seek to remedy injury to a requester when an agency withholds records in bad faith, civil penalties under Section 1305 aim to "penalize [the] conduct of a local agency and . . . provide a deterrent in the form of a monetary penalty in order to prevent acts taken in bad faith in the future." *Office of Dist. Atty.*, 155 A.3d at 1141. To impose a civil penalty under Section 1305(a), "the trial court must make findings that the local agency denied access to a public record in bad faith." *Id.* at 1140.

Our Court has explained:

> Where this Court has awarded or upheld penalties under Section 1305(a), there generally has been an initial denial by the agency (as required by the provision) followed by **ongoing nondisclosure or explanations not credited by the reviewing court**. *See, e.g., Uniontown . . .* , 185 A.3d at 1175-76; [*Office of Dist. Atty.*], 155 A.3d at 1141-42. By contrast, when an agency has shown **some diligence to**

---

[20] In his reply brief filed with this Court, Requester asserts, for the first time, that the trial court erred in failing to hold a "required evidentiary hearing" on his Fee Motion. (Requester's Reply Br. at 7, 9, 11.) However, Requester did not request a hearing in his Fee Motion or at any point before the trial court. Nevertheless, there is no requirement that the trial court conduct an evidentiary hearing on a fee motion if it determines that it can sufficiently review a bad faith claim based on the existing record. *Cf. Office of Dist. Atty.*, 155 A.3d at 1141 ("Although the record created prior to a hearing on a motion [under] Sections 1304 and 1305 of the RTKL may not always provide sufficient evidence to support a conclusion that a local agency acted in bad faith as a matter of law and it **may** be necessary for the trial court to take additional evidence, **such was not the situation here**.") (emphasis added).

18

**respond to a request** and nondisclosure is due to a **genuine and nonfrivolous belief that documents have been provided, are unavailable, or are not subject to disclosure**, we have declined to impose or uphold penalties.

*Brunermer v. Apollo Borough* (Pa. Cmwlth., No. 661 C.D. 2021, filed July 28, 2022), slip op. at 15 (emphasis added),[21] *appeal denied*, 293 A.3d 252 (Pa. 2023).

We conclude that the City's actions in this case did not justify the imposition of a civil penalty, for the same reason that Requester is not entitled to counsel fees. As explained above, the record shows that the City exercised diligence in responding to the request and that its claimed exemptions were based on the City's genuine, nonfrivolous belief that the withheld records were not subject to disclosure. *Brunermer*, slip op. at 15; *see* O.R. at 116, 130-31; Jones Affidavit ¶¶ 3-7. Although Requester attempts to portray the City's conduct in this matter as dilatory and obstructive, the trial court found "zero evidence" in the record to support such allegations, (Trial Ct. Op., 7/15/24, at 8), and we agree. Therefore, we conclude that the trial court properly declined to impose a civil penalty on the City under Section 1305(a).[22]

## C. Bill of Costs

Finally, Requester asserts that the trial court erred in denying his Bill of Costs. He asserts that because the City did not file exceptions as required by Philadelphia Civil Rule 227.5(E), the City waived all objections to the Bill of Costs. *See* Phila.Civ.R. *227.5(E) (requiring that a party file exceptions to a bill of costs within

---

[21] Under Section 414(a) of this Court's Internal Operating Procedures, we may cite an unreported memorandum decision of this Court, issued after January 15, 2008, for its persuasive value. 210 Pa. Code § 69.414(a).

[22] We need not address the additional question Requester raises before this Court regarding whether Section 1305(a) of the RTKL permits a court to award a civil penalty up to $1,500 **per record** or $1,500 **per request**, (*see* Requester's Br. at 43-49), because we conclude that no penalty was warranted here.

20 days after final judgment and stating that "[f]ailure to so file exceptions shall be deemed a waiver of all objections"). Requester contends that, in the absence of exceptions, the trial court was required to automatically award the requested costs pursuant to Philadelphia Civil Rule 227.5(E).

Philadelphia Civil Rule 227.5(B) provides that "[c]osts shall be allowed to a **prevailing party except as otherwise provided by law** or unless waived by a party who would otherwise be entitled thereto." Phila.Civ.R. *227.5(B) (emphasis added). The City contends that Requester is not entitled to costs because Section 1304(a)(1) of the RTKL authorizes a court to award costs only if it finds that the agency withheld responsive records in bad faith, and, here, we have concluded that the City did not act in bad faith. Our analysis, however, does not end there, because Section 1304(c) of the RTKL explicitly states that **"[n]othing in th[e RTKL] shall prohibit a court from imposing penalties and costs in accordance with applicable rules of court**." 65 P.S. § 67.1304(c) (emphasis added). Hence, we must look to the applicable local rules of court to determine whether Requester satisfied the requirements for an award of costs in this case.

Philadelphia Civil Rule 227.5(A) provides that "[a] bill of costs may be filed with the Office of Judicial Records **no later than ten (10) days after final judgment**. A judgment becomes final when the applicable appeal period has expired without appeal." Phila.Civ.R. *227.5(A) (emphasis added). Here, as explained in Section III.A. of this Opinion, the trial court's final order was entered on January 4, 2024, and the 30-day appeal expired on February 5, 2024. Requester had 10 days from that date, or until February 15, 2024, to file a timely Bill of Costs. Because Requester filed his Bill of Costs on February 12, 2024, we conclude that it was timely under Philadelphia Civil Rule 227.5(A).

20

With regard to exceptions, Philadelphia Civil Rule 227.5(E) states in relevant part:

> No later than twenty days after final judgment, exceptions (identifying those costs to which objection is made with the reason therefor) **shall be filed** with the Office of Judicial Records and a copy served on other parties. **Failure to so file exceptions shall be deemed a waiver of all objections.**
>
> **Upon expiration of the period for filing exceptions and upon praecipe, the Office of Judicial Records shall . . . where no exceptions have been so filed, impose the costs.**

Phila.Civ.R. *227.5(E) (emphasis added). The record shows that while the City filed a response in opposition to the Fee Motion, it did **not** file exceptions to the Bill of Costs as required by Philadelphia Civil Rule 227.5(E).[23] Thus, under this rule, the City waived all objections to the Bill of Costs.

Requester sought two separate costs: "Filing Fee for Entry of Appearance $174.54" and "Motion for Bad Faith & Attorneys Fees $72.68." (R.R. at 71a.) With regard to the second item, Requester was not the prevailing party on the Fee Motion, and therefore is not entitled to recover that cost. *See* Phila.Civ.R. *227.5(B). However, Requester **was** the prevailing party, although not entirely, in the underlying RTKL litigation in the trial court, as the City was ultimately ordered to disclose the 47 disputed emails to Requester. Therefore, his counsel's entry of appearance fee, paid on September 28, 2023, in the underlying RTKL litigation, (*see* O.R. at 2), could be a cost recoverable under Philadelphia Civil Rule 227.5(B)(1). However, the record shows that when the City did not file exceptions within the

---

[23] Under Philadelphia Civil Rule 227.5(E), the City was required to file exceptions within 20 days after the February 5, 2024 final judgment. The twentieth day fell on a Sunday, so the City had until Monday, February 26, 2024, to file timely exceptions to the Bill of Costs. The record shows that the City filed a response to the Fee Motion on February 26, 2024, but it did not file any response or exceptions to the February 12, 2024 Bill of Costs.

21

requisite period, Requester did **not** file a praecipe to tax costs with the trial court as required by Philadelphia Civil Rule 227.5(E). *See* Phila.Civ.R. *227.5(E) (providing that costs shall be imposed "[u]pon expiration of the period for filing exceptions **and upon praecipe**") (emphasis added); *see also* Phila.Civ.R. *227.5(I)(2) (setting forth the requirements for a praecipe to tax costs where no exceptions to a bill of costs have been filed). Absent the filing of a praecipe to tax costs, Requester was not entitled to an automatic award of costs under the local rules of court. Therefore, we affirm the trial court's denial of Requester's Bill of Costs.[24]

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's Order denying Requester's Fee Motion on the merits and denying his Bill of Costs.

_____
RENÉE COHN JUBELIRER, President Judge

---

[24] While our ruling is based on Requester's failure to satisfy the procedural requirements for a bill of costs, the trial court based its decision on its finding that Requester was not the "prevailing party" in the underlying RTKL appeal. However, "this Court may affirm a trial court's order on other grounds where affirmance is required for different reasons than those on which [the trial court] based its decision." *Watkins v. Pa. Dep't of Corr.*, 196 A.3d 272, 274 n.3 (Pa. Cmwlth. 2018).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia Law Department :
                                        :
             v.                   :    No. 281 C.D. 2024
                                          :
Dan Auerbach,                      :
                 Appellant     :

# **O R D E R**

NOW, March 31, 2025, the Order of the Philadelphia County Court of Common Pleas, entered on March 5, 2024, is hereby AFFIRMED.

_____
RENÉE COHN JUBELIRER, President Judge